## MARTIN VS UNITED STATES.

### Opinion rendered Sept. 26, 1907.

### (104 S. W. Rep. 678).

1. *Indian Affairs—Officers—Statutes.*

   A clerk in the office of the Commissioner of the Five Civilized Tribes in Muskogee was an officer according to Rev. St. U. S. § 5408 (U. S. Comp. St. 1901 p. 3658) having been appointed by the commissioner acting for the Secretary of the Interior who afterward approved the appointment. The statute above mentioned provides punishment for any officer who fraudulently takes away or destroys any record filed in his office, or deposited with him or in his custody.

2. *Same—Taking Record.*

   A clerk in the office of the Commissioner of the Five Civilized Tribes in Muskogee, who was appointed by the Commissioner acting for the Secretary of the Interior who afterward approved the appointment and who took from the office the Creek roll for the purpose of copying it, took it fraudulently according to Rev. St. U. S. § 5458 (U. S. Comp. St. 1901, p. 3658) which provides punishment for the fraudulent taking or destroying of records left in his office for custody.

Error to the United States Court for the Western District of the Indian Territory; before Justice Wm. R. Lawrence, January 28, 1907.

W. T. Martin, Jr., was convicted of taking from the office of the Commissioner of the Five Civilized Tribes of Muskogee, Ind. Ter., the Creek roll, and brings error. Affirmed.

On the 12th day of October, 1906, the grand jury of the United States Court for the Western District of Indian Territory, sitting at Muskogee, returned a bill of indictment against the defendant, W. T. Martin, Jr., as follows: "United States vs W. T. Martin, Jr., Defendant. Unlawfully withdrawing records. The grand jurors of the United States of America, duly selected, impaneled, sworn, and charged to inquire within and for the body of the Western District of the Indian Territory, in the name and by the authority of the United States of America, upon their oaths, do find, present, and charge that upon the 3d day of March, 1905, the Congress of the United States enacted a law providing that the Commission to the Five Civilized Tribes should cease to exist on and after the 1st day of July, 1905, and that after the date last aforesaid the duties and powers and labors which had devolved upon, and been vested in said Commission to the Five Civilized Tribes should be assumed and lodged in the Secretary of the Interior of the United States; that immediately after the said 1st day of July, 1905, the said Secretary of the Interior in carrying out his duties under the act of Congress aforesaid appointed one Tams Bixby to have charge of and direct control of the work of the Commission to the Five Civilized Tribes in the Indian Territory, designating the said Tams Bixby as Commissioner to the Five Civilized Tribes, with headquarters and principal offices at Muskogee, Indian Territory, and within the Western District of Indian Territory. And the grand jurors aforesaid, upon their oaths aforesaid, do further present that one W. T. Martin, Jr., was upon the 1st

day of February, 1906, an officer of the United States, to wit, clerk to and in the said office of the said Commissioner to the Five Civilized Tribes, he, the said Martin, having been duly appointed to said position by said commissioner, who was acting for and on behalf of the said Secretary of the Interior, and the appointment of said W. T. Martin, Jr., as clerk aforesaid, having been approved by the Secretary of the Interior. And the grand jurors aforesaid, upon their oaths aforesaid, do further present and charge that upon the said 1st day of February 1906, within the Western District of Indian Territory, there was in the custody of and deposited with the Commissioner to the Five Civilized Tribes, in his said office at Muskogee, Indian Territory, and with the said W. T. Martin, Jr., clerk to the Commissioner aforesaid, in said offices, a certain paper document and record, to wit, a roll containing the names of citizens by blood of the Creek Nation of Indians, said roll beginning with No. 1, Susanne Barnett, and ending with No. 10,064, Annie Grayson, which said roll had been duly approved by the Secretary of the Interior, and said roll being then and' there in the custody of the said Commissioner to the Five Civilized Tribes aforesaid, in his said office at Muskogee, Indian Territory, and the said roll being then and there in the custody of and deposited with the said W. T. Martin, Jr., clerk as aforesaid, in the office aforesaid, the said office being then and there the lawful depository of said roll, and the said Commissioner to the Five Civilized Tribes, and the said W. T. Martin, Jr., clerk as aforesaid, being lawful custodians of said roll, and the said roll being then and there deposited with and in the custody of the aforesaid persons, the said W. T. Martin, Jr., did, upon the 1st day of February, 1906, within the Western District of the Indian Territory aforesaid, unlawfully and feloniously take, remove, and withdraw said roll from the said office of the said Commissioner to the Five Civilized Tribes, in Muskogee, Indian Territory, to a place outside of the said

office, with the intent to make a copy of the same. And so the grand jurors aforesaid, upon their oaths aforesaid do say that at the time and place last aforesaid, and in the manner and by the means aforesaid, the said W. T. Martin, Jr., being an officer of the United States as aforesaid did unlawfully and feloniously, fraudulently take away, and did unlawfully and feloniously withdraw a paper, document, and record lawfully deposited with him and in his custody, as aforesaid, contrary to the form of the statute in such case made and provided, and against the peace and dignity of the United States of America." On the 13th day of October, 1906, the defendant filed demurrer to said indictment, as follows: "First. Because said indictment is not sufficiently direct and certain as to the facts which constitute the offenses charged. Second. Because the facts set forth in said indictment do not constitute a public offense. Third. Because of misjoinder of offenses charged, there being more than one offense charged in the indictment, and they not being such offenses as may be so charged." On the 18th day of October, 1906, the court overruled the demurrer to the indictment, and on the 21st day of January, 1907, the case came on for trial before a jury, and on the 23d day of January, 1907, the jury returned the following verdict: "We, the jury, duly impaneled and sworn in the above-entitled action, do find from the law and the evidence the within named defendant, W. T. Martin, Jr., guilty in manner and form as charged in the within indictment. D. O. Hazleton, Foreman." On the 24th day of January, 1907, defendant filed motion for a new trial upon 24 separate and distinct grounds. On the 28th day of January, 1907, the court overruled defendant's motion for new trial, and rendered judgment upon the verdict, and sentenced him to imprisonment at hard labor in the United States penitentiary at Ft. Leavenworth, Kan., for the term of one year and one day, and a fine of $100, to which defendant excepted, and was allowed 30 days within

which to prepare and file bill of exceptions. On the same day defendant filed petition for writ of error, which was allowed, and 23 assignments of error, and supersedeas bond in the sum of $2,000, which was approved by the court, and the case was brought to this court by writ of error.

Hutchings, Murphey & German and Soper, Huckleberry & Owen, for plaintiff in error.

William M. Mellette, U. S. Atty.

Townsend, J. (after stating the facts as above). The plaintiff in error has filed 23 assignments of error, as follows:

"(1) In not granting the defendant a new trial.

"(2) In rendering judgment on the verdict of the jury.

"(3) In overruling the demurrer of the defendant to the indictment.

"(4) In overruling defendant's objection, before any witness had testified, to the introduction of any testimony under the indictment, or to sustain the indictment.

"(5) In instructing the jury, over the objection of the defendant, as follows, to wit: 'As a matter of law, as I have already stated to you, Tams Bixby was Commissioner at that time to the Five Civilized Tribes, and was authorized to make this appointment under the law, and the Secretary was authorized to approve that appointment, if one was made; but it is for you to determine from the facts in the case whether or not he was the clerk in this office of Tams Bixby, or in the office of the Five Civilized Tribes of the Indian Territory, at the time of the alleged offense, and, if you find from the testimony beyond a reasonable doubt, or the evidence, that he was such clerk at the time of the alleged offense, in this indictment, as is described in the indictment, then the court instructs you as a matter of law he was an officer within the meaning of the statute which I will presently read to you.'

"(6) In instructing the jury, over the objection of the defendant, as follows to wit: 'The part of the indictment

which alleges that on the 1st of February, 1906, within the Western District aforesaid, the said W. T. Martin, Jr., unlawfully and feloniously did take, remove, and withdraw said roll from said office of the said Commissioner to the Five Civilized Tribes in Muskogee, Ind. Ter., to a place outside of said office, with the intent to. make a copy of same, is a material allegation in this indictment, and that fact or allegation must be established to your satisfaction from the evidence and testimony in this case beyond all reasonable doubt before you can legally and lawfully find the defendant guilty as charged in this indictment.'

"(7) In instructing the jury, over the objection of the defendant, as follows, to wit: 'The statute under which this indictment is drawn is section 5408 of the Revised Statutes of the United States, second edition, 1878, and was incorporated, in this statute from an Act passed February 26, 1853, and is in the following language: "Every officer having the custody of any record, document, paper, or proceeding specified in section 5403 (U. S. Comp. St. 1901, p. 3656). * * * *" I will read that section 5403: "Every person who willfully destroys or attempts to destroy, or, with intent to steal or destroy, takes and carries away any record, paper or proceeding of a court of justice, filed or deposited with any clerk or officer of such court, or any paper, or document, or record filed or deposited in any public office, or with any judicial or public officer, shall, without reference to the value of the paper, document or proceeding so taken, pay a fine," etc. I read you that to enable you to understand the section to which this reference is made, and the character of the paper or document.'

"(8) In instructing the jury, over the objection of the defendant, as follows, to wit: 'The essential and material part in this indictment is contained in the words, "Who fraudulently takes away or withdraws, or destroys such record," that means that it must be done fraudulently.'

"(9)   In instructing the jury, over the objection of the defendant, as follows, to wit:  'The purpose of the law was to prevent a fraudulent withdrawal of the documents belonging to that office from the office by any officer of the office, or the place; and, if you believe from the testimony in this case and the evidence beyond a reasonable doubt that W. T. Martin, Jr., the party who has been indicted, and on trial here, was a clerk in that office, duly appointed by the Commissioner, or the Secretary of the Interior, and commissioned, and took an oath to perform the duties of that position, then, within the meaning of the law I have read to you, he was an officer of that office; and if you further believe that while he was there that he had access to this roll that is in question, and that he withdrew that roll from that office with a fraudulent intent—that is, with a wrongful, unlawful intent, either to injure some one else or to violate his duty as an officer—and it would be his duty as an officer to protect the records of that office, to keep them within the office, and to not withdraw them from that office unless it was for some lawful and not fraudulent purpose.'

"(10)   In instructing the jury, over the objection of the defendant, as follows, to wit:   'You have heard the witnesses testify.   You have seen the record produced in court, purporting to be the record belonging to that office.   You have heard their statements with reference to the whereabouts of that record, and it is for you to determine whether or not this defendant did withdraw, or assisted, aided and abetted, the withdrawing of this document or record from the office.'

"(11)   In instructing the jury, over the objection of the defendant, as follows, to wit:  'A fraudulent purpose would be the purpose to injure some one else, a wrongful purpose, and illegal purpose, or not necessarily for a purpose that would result in damaging or injuring any one else, but, I repeat again, if it were his duty as a clerk of that office, having charge of this record and paper, then it would be his duty to see that it

is protected, that it remained in that office, that it was not used for any other purpose than the law justified its use or authorized its use; and, if he withdrew it from there without such lawful purpose in the absence of any legal right, as I have defined to you, to remove it, then it would be a fraudulent removal for the reason that it would be a violation of his duty as clerk and officer of that office.'

"(12)   In instructing the jury, over the objection of the defendant, as follows, to wit:   'Public records are sacred.   They are for the use of the public, and a custodian who has the use of that record has no right to use them for any other purpose than for public use.   It might not be illegal or punishable by fine for a party to use them for some other purpose, but, when the statute provides they shall not be withdrawn for any fraudulent purpose, then they could not be withdrawn for any purpose other than their rightful use of the document or paper.'

"(13)   In instructing the jury, over the objection of the defendant, as follows, to wit:   'A witness may be mistaken in his statements, and, if he is honestly mistaken, and you think so, and his testimony, although it is not in harmony with other testimony, if it has not been given willfully and intentionally false, then you have no right to discard his testimony because it may not agree with all the other facts and testimony, but you may take into consideration the variance in his testimony from his own former testimony, or from other testimony in the case in determining the credibility that it shall be entitled to.'

"(14)   In instructing the jury, over the objection of the defendant, as follows, to wit:   'There are some written instructions that I will read to you:   "The jury are instructed that the adverb, 'fraudulently,' as used in the law and in the indictment, qualifies the word, 'withdraw,' and is descriptive of the motive with which the act charged was done, and it is therefore necessary that the government should prove beyond a reasonable doubt that the withdrawal of such record as is charged in the

indictment was done, if at all, with a fraudulent motive. A fraudulent withdrawal is such that its object must have the tendency or effect to defraud another, or the intent of which is to avoid some duty by or incumbent on the party who does the act complained of and charged in the indictment." '

"(15)   In not instructing the jury, as requested by the defendant, as follows, to wit:  'You are therefore instructed that, in order to find the defendant guilty as charged in said indictment, you must find from the evidence, first, that he was an officer of the United States government or some department thereof; second, that as such officer he had the custody of the record, document, or paper set forth in the indictment; and, third, that he fraudulently withdrew said record, document, or paper as charged in said indictment.'

"(16)   In not instructing the jury, as requested by the defendant, as follows:  'The court instructs you that, while an office is a public charge or employment, every employment is not an office, and therefore every person employed in the service of the United States or any department thereof is not an officer.   Where the employment is a continuing one, defined by rules prescribed by law and not by contract, such an employment is an office, and constitutes the one so employed an officer, but where the duty or employment arises out of a contract, and is dependent for its duration and extent upon the terms of a contract itself, it is not an office, and the person employed is not an officer.   The term, "office," under this statute, embraces the ideas of tenure, duration, emolument, and duties. A government office is very different from a government contract or employment.   The latter is necessarily limited in its duration, and specific in its objects.   In an employment the terms agreed upon define the rights and obligations of the parties, and neither may depart from them without the assent of the other, and any man may be employed under a contract to perform a service for the government without becoming an officer, and,

in considering this question, you will determine from the evidence the character and duration of the employment of the defendant in the office of the Commissioner to the Five Civilized Tribes, the duties that devolve upon him, particularly with reference to the custody and control of the record alleged to have been withdrawn by him as set forth in the indictment, whether or not the employment was permanent, or subject to termination at any time without cause, by the Commissioner to the Five Civilized Tribes, or the Secretary of the Interior, and from those you will find whether or not he was such officer as comes within the purview of the law in this case, and, if you find that he was not such officer, you will find your verdict for the defendant.'

"(17) In not instructing the jury, as requested by the defendant, as follows: 'The jury are instructed that, in order to find the defendant guilty as charged in the indictment, you must not only find that he was an officer of the United States government, but that on the 1st·day of February, 1906, he had the custody of that portion of the Creek roll, as charged in the indictment, and that he was charged with the care and control of said roll as such officer.'

"(18) In not instructing the jury, as requested by the defendant, as follows: 'The court instructs the jury that, in order to find the defendant guilty, you must not only find that he was an officer of the United States government, having the custody of the records as set forth in the indictment, to wit, a certain portion of the Creek roll of citizens approved by the Secretary of the Interior, but that on the 1st day of February, 1906, having the custody of said record on said day, did fraudulently withdraw said record filed in his office or deposited with him or in his custody. You must find that he withdrew such record for a fraudulent purpose, which purpose, if carried out would have resulted in an injury to the rights of some one.

"(19) In not instructing the jury, as requested by the defendant, as follows: 'The jury are instructed that, in order

to find the defendant guilty as charged in the indictment, you must find that he fraudulently withdrew said record, document, and paper, as charged in the indictment filed in his office, which he occupied as an officer of the United States, or which was deposited with him as such officer or was in his custody as such officer, and not deposited with him or in his custody as a simple employe of the Commissioner to the Five Civilized Tribes, or in the Department of the Interior of the United States government.'

"(20) In not instructing the jury, as requested by the defendant, as follows: 'The jury are instructed that, in order to find the defendant guilty as charged in the indictment, the government must show beyond a reasonable doubt that on the 1st day of February, 1906, that there was deposited with and in the custody of the defendant the document described in the indictment as an officer of the United States, and that on said date, and as such officer, he did unlawfully and feloniously take, remove, and withdraw said roll from the office of the Commissioner to the Five Civilized Tribes in Muskogee, Ind. Ter., to a place outside of the said office with the fraudulent intent of making a copy of the same.'

"(21) In not instructing the jury, as requested by the defendant, as follows, to wit: 'The jury are instructed that the adverb, "fraudulently," as used in the law and in the indictment, qualifies the word "withdraw," and is descriptive of the motive with which the act charged was done, and it is therefore necessary that the government should prove beyond a reasonable doubt that the withdrawal of such record as is charged in the indictment was done, if at all, with a fraudulent motive. A fraudulent withdrawal is such that its object must have the tendency or effect to defraud another.'

"(22) In not instructing the jury, as requested by the defendant, as follows, to wit: 'In criminal cases, like the one on trial, where the government relies upon circumstantia

evidence alone to connect the defendant with the commission of the crime, the circumstances relied upon and necessary to a conviction must each be proven beyond a reasonable doubt, must be consistent with each other, must each be consistent with the defendant's guilt, and wholly inconsistent with his innocence, and, when all taken together, must satisfy you of his guilt, to the exclusion of every reasonable hypothesis other than that the defendant is guilty.'

"(23)   In not instructing the jury, as requested by the defendant, as follows, to wit:   'The court instructs the jury that in cases like the one on trial, where the government relies on circumstantial evidence alone to connect the defendant with the commission of the crime, the circumstances relied upon and necessary to a conviction must each be proven beyond a reasonable doubt, and, when all taken together, must satisfy you of his guilt, to the exclusion of every reasonable hypothesis other than that the defendant is guilty.' "

In his argument counsel for appellant first states that the indictment was drawn under section 5408 of the Revised Statutes of the United States, which is as follows:   "Every officer, having the custody of any record, document, paper, or proceeding specified in section fifty-four hundred and three, who fraudulently takes away, or withdraws, or destroys any such record, document, paper, or proceeding filed in his office or deposited with him or in his custody, shall pay a fine of not more than two thousand dollars, or suffer imprisonment at hard labor not more than three years, or both; and shall, moreover, forfeit his office and be forever afterward disqualified from holding any office under the Government of the United States."   And contends that, in order to sustain a charge under said section, three things must be established, as follows:   "First.   That the party charged was an officer of the United States, that he was an officer in the technical sense because upon conviction he forfeits his office, and therefore such office

must be one that is known to the law. Second. That as such officer he must have had the custody of the record, document, paper, or proceeding which he took away or withdrew. Third. That he must have fraudulently taken away, or withdrawn such paper in his custody as such officer." Plaintiff in error then sets out part of the testimony of the witnesses Tams Bixby, Wm. C. Beall, and W. S. Hawkins, and from their testimony seeks to draw the conclusion that the plaintiff in error was not an officer within the meaning of the law, but was simply a clerk of the Dawes Commission. He first cites section 1 of Mechem on Public Officers, as follows: "A public office is the right, authority, and duty, created and conferred by law, by which for a given period, either fixed by law or enduring at the pleasure of the creating power, an individual is invested with some portion of the sovereign functions of the government, to be exercised by him for the benefit of the public. The individual so invested is a public officer." And in the notes to said section: "An office is a special trust or charge created by competent authority. If not merely honorary, certain duties will be connected with it, the performance of which will be the consideration for its being conferred upon a particular individual who for the time will be' the officer." Cooley, J., in Throop vs Langdon, 40 Mich. 673. "Whether we look into the dictionary of our language, the terms of politics, or the diction of common life, we find that whoever has a public charge or employment, or even a particular employment affecting the public, is said to hold, or to be in, office." Danforth, J., in Rowland vs Mayor, 83 N. Y. 376. "An office is a public station, or employment, conferred by the appointment of government. The term embraces the ideas of tenure, duration, emolument, and duties." Swayne, J., in U. S. vs Hartwell 6 Wall. (U. S.) 385, 393, 18 L. Ed. 830. "Judge Platt defines the legal meaning of the term 'office' to be 'an employment on behalf of the government in any station or public trust,

not merely transient, occasional or incidental.' In re Attorneys, etc., 20 Johns. (N. Y.) 492." In Throop on Public Officers, § 3 it is said: "A public office is an agency for the state, and the person whose duty it is to perform this agency is a public officer. * * * The oath, the salary, or fees are mere incidents, and constitute no part of the office. Where no salary or fees are annexed to the office, it is a naked office—honorary—and is supposed to be accepted merely for the public good. This definition also excludes the idea that a public office must have continuance. It can make no difference whether there be but one act or a series of acts to be done, whether the office expires as soon as the one act is done, or is to be held for years, or during good behavior. In United States vs Hartwell, 6 Wall. (U. S.) 385, 393, 395, 18 L. Ed. 830, the court said: "An office is a public station, or employment, conferred by the appointment of government. The term embraces the ideas of tenure, duration, emolument, and duties. The employment of the defendant was in the public service of the United States. He was appointed pursuant to law, and his compensation was fixed by law. Vacating the office of his superior would not have affected the tenure of his place. His duties were continuing and permanent, not occasional or temporary. They were to be such as his superior in office should prescribe. A government office is different from a government contract. The latter from its nature is necessarily limited in its duration and specific in its objects. The terms agreed upon define the rights and obligations of both parties, and neither may depart from them without the assent of the other. * * * If the subordinates are not within the act, there is no provision in the laws of the United States for their punishment in such cases. So far as those laws are concerned, they may commit any of the crimes specified with impunity. We think it clear that it was not the intention of Congress to leave an omission so wide and important in the act, and our minds have been

brought satisfactorily to the conclusion that they have not done so."

The defendant in error states: "The duties now devolving upon the Commissioner to the Five Civilized Tribes were formerly vested in the Commission to the Five Civilized Tribes, but under an act of Congress approved March 3, 1905, the Congress of the United States enacted a law providing that the Commission to the Five Civilized Tribes should cease to exist on and after the 1st day of July, 1905, and that after the date last aforesaid, the duties, powers, and labors which had devolved upon, and been vested in said Commission to the Five Civilized Tribes, should be assumed and lodged in the Secretary of the Interior of the United States." And contends that the court will take judicial notice of the rules and regulations prescribed by the Secretary of the Interior, which put in operation this law of Congress, and cites Caha vs United States, 152 U. S. 222, 14 Sup. Ct. 517 (38 L. Ed. 415), as follows: "It may be laid down as a general rule, deducible from the cases, that wherever, by the express language of any act of Congress, power is intrusted to either of the principal departments of government to prescribe rules and regulations for the transaction of business in which the public is interested, and in respect to which they have a right to participate, and by which they are to be controlled, the rules and regulations prescribed in pursuance of such authority become a mass of that body of public records of which the courts take judicial notice." The case of Hall vs Wisconsin, 103 U. S. 5, 26 L. Ed. 302, cited by plaintiff in error, we do not think is applicable to the case at bar. In the case of Throop vs Langdon, 40 Mich. 673, Judge Cooley stated: "We find among them no evidence that an office known as chief clerk of the office of the assessor of Detroit has ever been created"— and further declares that the fact that the clerk in that case took an oath of office did not make him an officer. But does this case illustrate the question where, under an act of Congress,

and under the rules and regulations adopted by the Secretary of the Interior, the clerk in the case at bar was clothed with the discharge of public duties, and appointed by the government for the performance of these duties? We think not. In United States vs Hendee, 124 U. S. 313, 8 Sup. Ct. 508 (31 L. Ed. 465) Judge Miller, delivering the opinion of the court as to a pay master's clerk, stated that, under the act of 1883, "we are of opinion that the word 'officer' is used in that statute in the more general sense, which would include a paymaster's clerk, that this was the intention of Congress in its enactment, and that the collocation of the words means this." In State vs Stanley, 66 N. C. 59, 8 Am. Rep. 488, the court said: "A public office is an agency for the state, and the person whose duty it is to perform this agency is a public officer. This we consider to be the true definition of a public officer in its original broad sense. The essence of it is the duty of performing an agency; that is, of doing some act or acts, or series of acts for the state."

The second contention of plaintiff in error is that as such officer he must have had the custody of the record, document, paper, or proceeding, which he took away or withdrew. Plaintiff again quotes from the testimony of the witnesses Bixby, Beall, and Hawkins, to show that the Creek roll was not in his custody. The evidence clearly establishes that there were several clerks in that office, either one of whom could examine the roll or consult it, whenever they had occasion to do so; that it might be said that Mr. Bixby alone was the only man having the custody of the roll, but it is probable that Mr. Bixby did not see the roll once a year. His office seems to have been divided into different departments, with a clerk in charge of each department, and, in reference to the department in which this roll was deposited, it appears that Mr. Hawkins was in charge; but the roll was open to the inspection or examination or use of any clerk under him, and we are of the opinion that the construction contended for by the plaintiff in error is too

narrow, and that any one who had the handling of that roll, who was appointed in the manner that the plaintiff in error was appointed, was not only an officer within the meaning of the law, but had the custody of the roll.

The third contention of plaintiff in error is that he must have fraudulently taken away or withdrawn such paper in his custody as such officer, and cites Starkie on Criminal Pleading, as follows: "Whether particular circumstances constitute indictable fraud is a question of law, and therefore, according to a fundamental rule of description in indictments, such circumstances must be set out in order to show that the facts amounted to an indictable offense." Section 5408, Rev. St. U. S., says: "Every officer having the custody of any record, document, paper, or proceeding specified in section 5403, who fraudulently takes away or withdraws or destroys any such record," etc. The charge in the indictment is: "The said W. T. Martin, Jr., did upon the first day of February, 1906, within the Western District of the Indian Territory aforesaid, unlawfully and feloniously take, remove, and withdraw said roll from the said office of the said Commissioner to the Five Civilized Tribes, in Muskogee, Ind. Ter., to a place outside of the said office, with the intent to make a copy of the same." We think that the withdrawal of the roll was fraudulent, as contemplated by the statute. It was fraudulent because the confidence reposed in the plaintiff in error by the government of the United States was betrayed. His duty was to keep that record in the place where it was deposited, and in removing it from its usual place of deposit he was guilty of such a deceitful practice by depriving the United States of the use of said roll as was contrary to the common rules of honesty and was fraudulent. It also appears that the plaintiff in error, as shown by the testimony, promulgated a public document without authority of law. The withdrawal of the roll with the intent to make a copy of the same constituted an indictable fraud. In Mitchell

vs Kintzer, 5 Pa. 216, 47 Am. Dec. 408, the syllabus states: "Fraud consists of any deceitful practice used in depriving or endeavoring to deprive another of his known right by means of some artful device or plan contrary to the plain rules of common honesty." In 1 Story's Equity, § 258, it is said: "By constructive frauds are meant such acts or contracts as, although not originating in any actual evil design, or contrivance to perpetrate a positive fraud or injury upon other persons, are yet, by their tendency to deceive or mislead other persons, or to violate private or public confidence, or to impair or injure the public interests, deemed equally reprehensible with positive fraud, and therefore are prohibited by law, as within the same reason and mischief, as acts and contracts, done malo animo."

We are of the opinion that the plaintiff in error was an officer of the United States, that he had the custody of the Creek roll, and that he fraudulently withdrew the same from the office of the Commissioner to the Five Civilized Tribes, as alleged in the indictment, and, there being no substantial error in the case, the judgment of the court below should be, and is hereby, affirmed.

GILL, C. J., and CLAYTON, J., concur.