[No. 2078]

UNITED STATES FIDELITY AND GUARANTY COMPANY (a Corporation), Appellant, *v.* E. MARKS, Et Al., Respondents.

[142 Pac. 524]

1. Statutes—Construction of Penal Statutes.
    Penalties or forfeitures in addition to those stated in a statute should not be implied or imposed by the court.

2. Corporations — Foreign Corporations — Forfeitures — Violation of Domestic Regulations.
    Where a Maryland fidelity and guaranty company has secured a license to do business in Nevada, its right to foreclose a mortgage, taken to indemnify it for loss incurred as surety on an appeal bond, will not be denied because such corporation has failed to pay a gross earnings tax imposed on foreign insurance companies doing business in Maryland, and which tax might be enforced in Nevada under general corporation law (Stats. 1903, c. 88), sec. 106, providing that foreign corporations doing business in the state shall suffer such penalties and taxes as may be imposed by the laws of the foreign state on corporations of Nevada; the Maryland statutes containing no provision that the failure to pay the tax shall result in any forfeiture of the corporation's property rights, the only penalty imposed being a fine.

3. Mortgages—Purchasers—Acquisition of Tax Title.
    A purchaser of mortgaged land from the mortgagor cannot acquire title as against the mortgagee by failing to pay the taxes and bidding in the property at the resulting tax sale.

4. Constitutional Law — Determination of Constitutional Questions.

The supreme court will not determine constitutional questions which are not essential to a decision of the case.

Appeal from the Fifth Judicial District Court, Nye County; *Mark R. Averill*, Judge.

Suit by the United States Fidelity and Guaranty Company against E. Marks and others. Decree for defendants, and plaintiff appeals. **Reversed and remanded.**

*H. R. Cooke*, for Appellant.

*P. E. Keeler*, for Respondents.

By the Court, Talbot, C. J.:

The appellant, a surety company organized under the laws of Maryland, has transacted business in the State of Nevada as a surety on bonds and undertakings since 1901, under license issued in this state.

In August, 1907, the Tonopah Lumber Company obtained judgment against the respondent, E. Marks, in the district court at Tonopah for the sum of $14,908.09 and $518.25 costs. After the denial there of a motion for a new trial, appeal was taken to this court.

Upon the application of E. Marks and Eliza Kind to the Tonopah agent of appellant, and the representation of Marks that they owned property of a greater value than $200,000, it was agreed that the appellant would furnish a bond to perfect the appeal and stay the judgment in the required amount of $30,996.68, in consideration of Marks and Kind securing appellant against loss by giving a mortgage to appellant, which was executed by Marks and Kind accordingly, and delivered to appellant.

Later the judgment in favor of the Tonopah Lumber Company against Marks and others was affirmed by this court. Thereafter they paid the Tonopah Lumber Company various sums, leaving a balance of $7,352.40 unpaid on November 17, 1908. For the recovery of this sum, the

Tonopah Lumber Company brought an action against appellant, and on April 30, 1910, judgment was rendered in the United States Circuit Court, Carson City, against the appellant for $7,352.40, with $882.30 interest and $43.30 costs. On May 14, 1910, appellant paid $8,278, the total amount of this judgment, to the Tonopah Lumber Company, and $50 attorney's fee in defending the action.

After the mortgage was executed, and before the commencement of this action, Eliza Kind transferred her interest in the mortgaged property to E. Kind Realty Company, a corporation, and E. Marks transferred his interest in the property to E. Marks Realty Company, a corporation, and the latter company transferred its interest to respondent, Southern Nevada Real Estate and Investment Company, a corporation.

This action was commenced on September 12, 1910, to obtain judgment for the $8,278 and $50 attorney's fee paid by appellant, as before stated, and to secure a decree of foreclosure of the mortgage.

The sale by E. Marks to the Marks Realty Company was made on May 28, 1908, and was for his half interest in lot 5 and the south half of lot 6, block B, in Tonopah, and the sale from the Marks Realty Company of this same interest was made to Southern Nevada Real Estate and Investment Company on July 10, 1909.

The one-half interest in lot 5 and south half of lot 6, block B, so conveyed to the Southern Nevada Real Estate and Investment Company, was assessed by the county assessor of Nye County for the year 1909, and the amount of tax due thereon was $52.62. The first half or installment of this tax, $26.31, was paid on the first Monday of December, 1909, by H. C. Schmidt, the president and manager of the investment company, from the funds of that company. The last half of this tax was allowed to go delinquent on the first Monday in June, 1910, at which time that company still remained the owner of the interest so conveyed to it. At the tax sale of that interest and property on July 18, 1910, H. C. Schmidt, with the intention to thereby remove the lien of appellant's

mortgage if possible, bid in the one-half interest in lot 5 and the south half of lot 6 in the name of J. C. Hedemark, paying therefor the delinquency and costs and penalties, but without authority or funds from him, although he had authorized Schmidt to take title to some Tonopah property in the name of Hedemark for the purpose of aiding Schmidt in clearing up the title. The district court found that the neglect to pay the second tax installment was for the purpose of protecting the Nevada Real Estate and Investment Company and the interest of H. C. Schmidt against the lien of appellant's mortgage. Of the 5,000 shares of that company he owns 4,000, his wife 996, and a third party, who serves with them as the directors, 4 shares. The court found that the actual value of the entire mortgaged premises would barely suffice to reimburse appellant and discharge the mortgage, and that without the half interest in lot 5 and the south half of lot 6, block B, the remainder of the property would be insufficient to pay appellant's claim; that E. Marks has received his discharge in bankruptcy; that, pursuant to the plan to defeat appellant's mortgage, the Southern Real Estate and Investment Company intentionally neglected to redeem the interest from the tax sale.

Finding No. 19 of the district court is as follows: "That by the laws of the State of Maryland a Nevada surety company doing business in Maryland would, at the date of the entering into the contract in question in this case, to wit, on September 18, 1907, have been required to pay a tax upon premiums collected by such Nevada corporation in the State of Maryland, amounting to $1\frac{1}{2}$ per cent of such premiums during the last license year, without any deductions whatever; that the plaintiff has never paid to the state controller of the State of Nevada any tax upon premiums collected by plaintiff in the State of Nevada, although plaintiff collected premiums in the State of Nevada as a surety company and for surety business during the tax year immediately preceding the execution of the contract and mortgage and the collection of the

premium specified in the complaint herein; that by reason of such failure on the part of said plaintiff to pay the tax aforesaid before transacting the business mentioned and described in the complaint of plaintiff herein the said plaintiff forfeited any rights that it might have to do business in this state, and plaintiff, by reason of such failure and forfeiture, had no right to enter into the contract set forth in plaintiff's complaint, and any such contract attempted to be entered into by the said plaintiff as is attempted to be pleaded in this action is null and void, and cannot be enforced in this state.

"As conclusions of law from the foregoing facts the court finds: (1) That plaintiff has no right to sue upon said contract and mortgage, and that the same is null and void, and judgment is ordered for the defendants herein, with their costs."

In our general corporation law, section 106, which was in force at the time of the execution of the mortgage and until 1913, reads as follows: "When, by the laws of any other state, country, territory, colony, dependency, or nation, any other or greater taxes, fines, penalties, licenses, fees, or other obligations or requirements are imposed upon corporations of this state, doing business in such other state or nation, or upon their agents therein, than the laws of this state impose upon their corporations or agents doing business in this state, so long as such laws continue in force in such other or foreign state or nation, territory, colony, dependency, or country the same taxes, fines, penalties, licenses, fees, obligations, and requirements of whatever kind shall be imposed upon all corporations of such other state or nation, country, territory, colony, or dependency doing business within this state and upon their agents here; *provided*, that nothing herein shall be held to repeal any duty, condition, or requirement now imposed by law upon such corporations or other states or nations transacting business in the state."

[1-2] Among the various provisions in the statutes of Maryland relating to insurance companies is the following:

"No person shall act as agent or solicitor in this state for any insurance company, including individuals, whether resident or nonresidents, partnership or joint-stock association, except for such companies as may be chartered under the laws of this state, in any manner whatever relating to insurance risks, until all the provisions of this article relating thereto have been complied with, and there has been granted by the insurance commissioner a certificate of authority or license, for which said company, individual, resident or nonresident, association, or their agent, shall pay into the state treasury the sum of three hundred dollars, and shall also pay into the said treasury a tax of one and one-half per centum on the amount of premiums actually collected, received or secured in this state, or from residents thereof, during the last license year, by or for said company. * * *" (Laws 1894, c. 290.)

Section 138 of the corporation laws of that state provides that: "Any person or persons, or any company or association, violating any of the provisions of sections 121–137, of this article, shall be subject to a fine of not less than one hundred dollars, nor more than one thousand dollars." (Code Pub. Gen. Laws 1888, art. 23.)

If these sections, and others cited by the respondent, have any reference to surety companies, and if the transaction by which the appellant went on the appeal and stay bond in the case of the Tonopah Lumber Company be regarded as an insurance risk, still it does not appear that there is any provision in the laws of either state that any surety or other company entering into such a transaction while licensed to do business in the state, as appellant was here, shall not be allowed to maintain an action to recover upon a mortgage or obligation given to indemnify it against loss resulting from its having to pay the judgment affirmed against the parties who executed the mortgage.

If all the details of the Maryland law were in force in this state, and the license should not have been issued to the appellant here to do business until it had complied with all the requirements of both the Maryland and

Nevada laws, and had paid 1½ per cent of the amount of the previous year's premiums, we think it would be inequitable and too severe to hold that the appellant could not be reimbursed for the debt and judgment it paid pursuant to the agreement and mortgage executed while it held a license to do business in this state. Penalties or forfeitures, in addition to those stated in the statute, should not be implied or imposed by the courts.

Whether this percentage could not be exacted before or collected after the issuance of the license, and whether the fine could be collected under the Maryland statute, are matters in which the state, rather than the respondent, is interested. Perhaps the appellant did not know of the Nevada retaliatory statute, and the officers here may not have been aware of the Maryland law.

It is a well-settled rule that penalties not expressed are not favored, and that the court will not read or legislate into a statute forfeitures which it does not provide. The contention as to whether section 106 of our corporation law brought the provisions of the Maryland act into force in this state is immaterial. If it be admitted for the purposes of this case that the Maryland statute was as effective as if it had been regularly passed by our legislature, it is still apparent that it has no provision authorizing the confiscation or forfeiture of appellant's mortgage, or providing that it shall not have the right to sue for its foreclosure or bring other actions, or that it shall not have the right to do business in this state while holding a license for that purpose. If appellant were liable for all that the Maryland law exacts, and can be required to pay a percentage on its business for the previous year, or be fined or have its officers imprisoned for failure to make such payment, or could have been refused a license until this percentage was paid, it does not follow that the penalties not specified in the statute, such as the forfeitures of the mortgage or the right to foreclosure, can be imposed by the courts. If the judgment were correct, it would apply to deprive the appellant

from recovering if $1,000,000 instead of $8,000 had been paid by appellant to the Tonopah Lumber Company for the mortgagor respondents.

[**3**] The learned district judge properly concluded that the allowing of the tax to go delinquent, or the bidding in at the tax sale by the owner of the property, or by the president and manager of the Southern Nevada Real Estate and Investment Company, with the intention of freeing the property from the mortgage lien, did not effect that purpose.

[**4**] In the elaborate briefs numerous constitutional questions have been presented. This court has held at different times that no determination of such proposition will be made when not essential to a decision of the case.

As the case was carefully tried, and under the specific findings the appellant is entitled to have its mortgage foreclosed and the property sold to pay the amount due appellant, the case is remanded, and the district court is directed to enter judgment and order of foreclosure in favor of the appellant accordingly.

## ON PETITION FOR REHEARING

*Per Curiam:*

Rehearing denied.