### STATE v. DAVIS et al.

No. 3356.   Decided August 30, 1919.   (184 Pac. 161.)

1. INTOXICATING LIQUORS—AUTOMOBILE ILLEGALLY TRANSPORTING LIQUOR SUBJECT TO FORFEITURE. In view of Comp. Laws 1917, section 5839, requiring the provisions of the Revised Statutes to be liberally construed, and the Prohibition Law, section one, requiring liberal construction of the act, under Comp. Laws 1917, section 3359, an automobile used in the illegal transportation of liquor into Utah may be seized and forfeited as other things and other property may be forfeited in accordance with the various provisions of the Prohibition Law, the rule of ejusdem generis not applying in the construction of the section.[1]   (Page 61.)

2. INTOXICATING LIQUORS—CLAIMANT OF SEIZED AUTOMOBILE MUST SHOW OWNERSHIP AND IGNORANCE OF USE. When intoxicating liquors have been found illegally in an automobile used for their transportation it is prima facie evidence that the car was being used illegally, and one desiring to recover the car must establish by a preponderance of the evidence, not beyond a reasonable doubt, the fact of his ownership, and that he had no knowledge of the illegal use.   (Page 62.)

3. INTOXICATING LIQUORS—CLAIM BY PARTIAL PAYMENT VENDOR OF AUTOMOBILE SUSTAINED. Where an automobile is sold on installments, if the vendor or his assignee has no knowledge or information of the car's intended use in the illegal transportation of intoxicating liquors he is entitled to reclaim it when seized by the sheriff for forfeiture.   (Page 63.)

4. INTOXICATING LIQUORS—ON SEIZURE OF STOLEN AUTOMOBILE OWNER MAY RECLAIM. If an automobile is stolen and used by the thief for the illegal transportation of intoxicating liquors, in which enterprise it is seized by the sheriff and sought to be forfeited, the owner is entitled to reclaim it.   (Page 63.)

FRICK, J., dissenting.

Appeal from District Court, Second District, Morgan County; *A. W. Agee,* Judge.

Search and forfeiture proceedings by the state of Utah against A. F. Davis, seven hundred and forty-four pints of

---

[1] *Kolb* v. *Peterson,* 50 Utah, 450, 168 Pac. 97.

whisky, two cases of gin, one Paige automobile, and certain other property unlawfully used, Mrs. F. B. Ferrand, and Charles McSwine. From judgment of forfeiture, defendants Ferrand and McSwine appeal.

JUDGMENT REVERSED and cause remanded with directions to vacate judgment and to grant appellants new trial.

*P. P. Jenson* of Salt Lake City, and *George Halverson* of Ogden, for appellants.

*Dan B. Shields,* Atty. Gen., and *O. C. Dalby, H. Van Dam, Jr.,* and *James H. Wolfe,* Asst. Attys. Gen., for the State.

WEBER, J.

On December 12, 1918, the sheriff of Weber county, Utah, arrested defendant A. F. Davis, who was then in charge of an automobile containing 744 pints of whisky and two cases of gin. The arrest was made in Morgan county. Thereafter proceedings were instituted to forfeit the liquor and the automobile. The automobile was claimed by Mrs. F. B. Ferrand by virtue of a contract of purchase between her and the Paige Sales Company, she having purchased the machine on the partial payment plan. Charles McSwine also claimed an interest in the automobile by virtue of a title retaining note which had been transferred from the Paige Sales Company to one N. W. Miller, and by Miller to McSwine, who was the owner of the note at the time of the seizure.

Mrs. Ferrand maintained that if the automobile was used for transporting liquor it was without her knowledge or consent. She testified that the machine had been taken from her garage in Salt Lake City during the nighttime without her knowledge or consent. McSwine also asserted that he had no knowledge or information of the use to which the automobile was being put.

The case was tried in the district court to a jury who returned the following verdict:

"* * * That on the twelfth day of December, 1918, H. C. Peterson, sheriff of Weber county, state of Utah, seized the seven hundred and forty-four pints of whisky and the bottles containing the same, and twenty-four quarts of gin in two cases, with the bottles in which the same was contained, and the Paige automobile described in the return of the said H. C. Peterson, in the county of Morgan and state of Utah, and that at the time of said seizure the said whisky and gin were being unlawfully used and transported in said county and state in violation of the law of this state prohibiting the transportation, use, and possession of intoxicating liquors.

"We, the jury, further find that at the time of the seizure of said liquors they were being transported in the Paige automobile described in the return of the sheriff herein, and that said automobile was at said time kept and used in violation of the law of this state prohibiting the transportation, use, and possession of intoxicating liquors."

On this verdict a judgment of forfeiture was entered by the court. Defendants F. B. Ferrand and Charles McSwine appeal.

While not controlling, the principal and most important question in this case is whether the district court had power to forfeit the automobile which had been seized by the sheriff.

The purpose of the Prohibition Law is not only to prevent the traffic in intoxicating liquors, but also to prevent transportation and to make the state what is termed "bone dry." Comp. Laws Utah 1917, section 3343, says:

"Except as hereinafter provided, the manufacture, sale, keeping, or storing for sale in this state, or offering or exposing for sale, or importing, carrying, transporting, advertising, distributing, giving away, exchanging, dispensing or serving of liquors, are forever prohibited in this state. It shall be unlawful for any person within this state knowingly to have in his or its possession any intoxicating liquors, except as in this title provided."

How can the objects of the law be attained and how shall the law be construed? The statutes of Utah contain the answer. Comp. Laws of Utah 1917, section 5839, says:

"The Revised Statutes establish the law of this state respecting the subjects to which they relate, and their provisions and all proceedings under them are to be liberally construed with a view to effect the objects of the statutes and to promote justice."

Not satisfied with this mandate as to the construction of

statutes, the Legislature, in the first section of the Prohibition Law, emphasized the subject by adopting this imperative provision:

"This entire title shall be deemed an exercise of the police powers of the state for the protection of the public health, peace, and morals, and all of its provisions shall be liberally construed for the attainment of that purpose."

The case of *Kolb* v. *Peterson*, 50 Utah, 450, 168 Pac. 97, involved the construction of the following section of the Prohibition Act:

"Any person who shall in any street or alley, public place, store, restaurant, hotel lobby or parlor, or in or upon any passenger coach, street car, or upon any other vehicle commonly used for the transportation of passengers, or in or about any depot, platform, waiting station or room, or at any public gathering, drink any intoxicating liquors of any kind, or shall be drunk or intoxicated shall be deemed guilty of misdemeanor." Comp. Laws, Utah, 1917, section 3361.

The court, speaking through Mr. Justice Thurman, said:

"It is also contended by the petitioner that there is no statute at all making drunkenness a crime except in the places specifically enumerated. It is admitted by respondent that there is no statute making drunkenness a crime outside of such places, unless respondent's construction of the statute in question is adopted. This contention on the one side and admission on the other presents a question of more than ordinary importance to the people of Utah.

"The history of the prohibition propaganda in this state leading up to the passage of the law in question is so recent and fresh in the minds of the people as to be a matter of common knowledge. Every political party in the state, in the political campaign of 1916, declared unequivocally in its convention in favor of absolute state-wide prohibition. The Governor and every member of the Legislature, before the election, was solmnly pledged to give force and effect to these platform declarations as soon as practicable after the Legislature convened. The purpose and object of the legislation which the people demanded was the suppression of drunkenness and intoxication in the state of Utah. The prohibition of the sale and traffic in intoxicating liquors, except under the strictest and most rigid regulation, was but means to the end that drunkenness and intoxication should cease to exist in every part of the state. The Legislature, by the law in question, even went so far as to make it unlawful for any person within

the state to knowingly have in his possession any intoxicating
liquors, except as provided in the law itself.  In view of these con-
ditions and circumstances, it seems strange and unreal, and al-
most unbelievable, that the Legislature could have purposely
omitted to make drunkenness a crime in every part of the state,
wherever it might occur, whether in the streets or other public
places named in the section of the statute in question or otherwise.
The suppression of drunkenness and intoxication, as above stated,
was the ultimate end to be accomplished and the primary pur-
pose for which the law was enacted.  It would, indeed, be a severe
impeachment of the intelligence of every member of the Legis-
lature, the Governor and his legal advisers, if it should develop
that, after all, the law fails to make drunkenness a crime except
in the places specifically mentioned. . *   *   *

"We are unanimous in our opinion that the statute in question
makes drunkenness and intoxication by the use of intoxicating
liquors a crime, wherever and whenever it may occur at any place
in the state."

No precedent is cited in that opinion, but one is made.  The
rules of statutory construction are not resorted to, none of
them except the one cardinal rule that statutes should be so
construed as to carry out the will of the people as declared by
the Legislature, and in accord with the object, purpose, and
spirit of the law.   In the *Kolb Case* technicalities were
brushed aside, and the court refused to emasculate the statute
by resorting to technical rules of strict construction.   Guided
by the same spirit—with the determination not to depart from
the plainly declared intention of the Legislature—we should
consider the question now before us.  No rule of construction
should be invoked except as it may be necessary to ascertain
the legislative intent, and no rule should be applied so as to
devitalize a statute enacted for the public good.   Our Pro-
hibition Law is copied to a large extent from that of Okla-
homa.   At the time the present law was being discussed and
enacted section 3617, Revised Laws Oklahoma 1910, provided:

"When a violation of any provision of this chapter shall occur
in the presence of any sheriff, constable, marshal, or other officer
having power to serve criminal process, it shall be the duty of
such officer, without warrant, to arrest the offender and seize the
liquor, bars, furniture, fixtures, vessels, and appurtenances there-
unto belonging so unlawfully used, and to take the same imme-
diately before the court or judge having jurisdiction in the prem-

ises, and there make complaint, under oath, charging the offense so committed, and he shall also make return, setting forth a particular description of the liquor and property seized, and of the place where the same was so seized, whereupon the court or judge shall issue a warrant commanding and directing the officer to hold the property so seized in his possession until discharged by due process of law, and such property shall be held and a hearing and adjudication on said return had in like manner as if the seizure had been made under a warrant therefor."

Comp. Laws Utah 1917, section 3359, is as follows:

"When a violation of any provisions of this title shall occur in the presence of any sheriff, constable, marshal, police officer, or other officer having power to serve criminal process, it shall be the duty of such officer, without warrant, to arrest the offender and seize the intoxicating liquors, vessels, and other property so unlawfully used, and to take such offender or offenders immediately before the court or judge having jurisdiction in the premises, and there make complaint under oath, charging the offense so committed; and he shall make return, setting forth a particular description of the liquors, vessels, and other property seized, and of the place where the same were sized; whereupon the court or judge shall issue a warrant commanding and directing the officer to hold safely the property so seized in his possession until discharged in due process of law; and such property shall be held in like manner as if the seizure had been made under a warrant therefor. If any peace officer shall have probable cause to believe any person has on or about his person in any kind of receptacle, or in any vehicle under his control, liquors in any quantity, in violation of any of the provisions of this title, such peace officer shall have authority to examine such vehicle and receptacle and the contents thereof, and the finding of any liquors in the possession of any such person, or under his control, not bearing a permit of a justice of the peace or a tag or label of the Attorney General, shall be prima facie evidence that such liquors were kept for an unlawful purpose, and such person shall be forthwith arrested by such officer."

Why did the Utah legislators, instead of copying the words "liquors, bars, furniture, fixtures, vessels, and appurtenances thereunto belonging so unlawfully used," use the words, "intoxicating liquors, vessels and other property so unlawfully used"? If instead of "other property" the word "appurtenances" had been used, it might be a close question as to whether an automobile should be included as an "appurtenance"; but the words "other property" are used ·in their

ordinary sense, and with the evident intention of including all property that could be used for unlawful transportation. Remembering that transportation of intoxicating liquors is just as much a violation of law as the sale or possession thereof, section 3359, supra, when applied to illegal transportation of intoxicating liquor, can and should be read as follows:

"When the *illegal transportation of intoxicating liquor* shall occur in the presence of any sheriff, constable, marshal, police officer, or other officer having power to serve criminal process, it shall be the duty of such officer, without warrant, to arrest the offender and seize the intoxicating liquors, vessels, *and other property* so unlawfully used *in the illegal transportation of such intoxicating liquors.*"

"Other property so unlawfully used" means what? Does it not mean "other property so used in illegal transportation"? What other property can be used in illegal transportation? The answer is, wagons, carriages, automobiles, and vehicles of every kind so unlawfully used.

It is said that an automobile can be enjoined as a nuisance, and that proceedings can be instituted under section 3350 of the Prohibition Act, which declares all premises, buildings, boats, and other places where intoxicating liquors are manufactured, sold, bartered, kept, stored, or given away, and all liquors, bottles, glasses, kegs, pumps, bars, and other property used in connection therewith, to be common nuisances. The same section provides that any person guilty of maintaining said nuisance shall be guilty of a misdemeanor, and in the following section provision is made for enjoining and abating such nuisance by suits in equity. The sections referred to have reference to the injunction and abatement of nuisances at a fixed or definite place, so that a boat on which liquors are stored, or from which they are sold, is a place, and an automobile is, under the law, deemed a place, when used as a place of storage or sale. The provisions as to nuisance and injunctions were never intended to apply to "blockade running" automobiles. To enjoin the use of an automobile engaged in illicit transportation of intoxicating liquors would be ineffectual and abortive, and would be a proceeding not within the purview of the statute.

Appeal from Second District.

Counsel contend that the rule of ejusdem generis should be invoked in construing the statute. That rule is that, when general words follow words that are particular, the former should be construed as applying to words and things of the same kind or species designated in the particular words. But this is only one of the rules of construction, and, like rules of punctuation and grammar, it has no application where the intent of the legislative act is clear. It is a rule of strict construction. Black. Interp. Laws, page 217. The Prohibition Law itself commands of us a liberal construction. It is only by strict construction, and by applying a strict and technical rule of construction, that it can be said that the words "other property" and "other things," occurring in different sections of the law, mean that "other property" or "other things" are of the same kind or species as liquors, vessels, bars, etc. The Legislature has enacted into law the common-sense rule that words and phrases are to be construed according to the context and the approved use of the language. Comp. Laws Utah 1917, section 5848. Using the words "other property" in their ordinary sense, and ignoring the strict technical rules of construction because there is no necessity for invoking them when the language of the law is clear and unambiguous, there is no difficulty in arriving at the conclusion that "other property" embraces all things that may be illegally used in the transportation of contraband liquor, and that an automobile may be seized as it was by the sheriff in this case. And if lawfully seized, it may be forfeited as "other things" and "other property" may be forfeited in accordance with the various provisions of the prohibition law.

Were there no other assignments of error save that relating to the power of the court to forfeit the automobile we would affirm the judgment in this case.

Among other instructions given by the court was the following:

"I further charge you, gentlemen of the jury, that, where liquors are transported or used in violation of the laws of this state, such liquors or other property so used are subject to forfeiture; and if any person claims said liquors or other property, and that the

same were being used without his or her knowledge or consent, against his will or her will, the burden is upon the party so claiming to prove his or her innocence in that matter; that is to say, that the said liquors or other property were so unlawfully used without his or her knowledge and consent, and against his or her will, beyond a reasonable doubt."

It is urged that it was the intention of the Legislature that trials of this kind should partake of the character and be the same substantially as criminal prosecutions, and that the burden is upon the state to prove the guilt of the accused beyond a reasonable doubt. This position is untenable. The action of forfeiture under the prohibition law is in the nature of a proceeding in rem. The persons claiming the property are really not defendants, as they are denominated in the statute, but are claimants, and the burden of proof is upon them. When intoxicating liquors have been found to be illegally in an automobile or other vehicle used for transportation of intoxicating liquors, it is prima facie evidence that the automobile or other vehicle was being used illegally, and any one desiring to recover the automobile is required to establish by a preponderance of the evidence the fact of ownership, and that he had no knowledge or information regarding the use to which the automobile was being put, and that the same was not used for the illegal transportation of liquor with the consent of such claimant or owner. But we cannot agree with the learned judge of the district court that, in order to recover the property, the burden is upon the defendant to prove beyond a reasonable doubt that the same was used without his knowledge or consent. The authorities cited by the Attorney General to sustain the instruction are not convincing. It was prejudicial error to require defendants to establish their claims or their defense by proof beyond a reasonable doubt.

Another instruction given by the court was the following:

"So far as the claim of the defendant Charles McSwine is concerned, if you find that he allowed the defendant Ferrand to hold possession of the automobile and to use the same as she might choose, or to control the use of the same, then it is immaterial for the purposes of this trial whether or not he knew for what purpose said automobile was being used, since, having intrusted

the defendant Ferrand with full possession and control thereof, he would be bound by her acts, and by any knowledge or notice, if any, that she may have had as to the purpose for which said automobile was being used."

We cannot accede to the doctrine that one who buys an automobile on the installment plan becomes the agent of the vendor who retains title. If the vendor had knowledge of the intended use of the automobile he would not be entitled to relief for forfeiture, but the vendor or his assignee who, without such guilty knowledge, transacts business in the usual course of trade, should be protected in his property rights. There is no element of agency in the contract between vendor and purchaser nor between the vendor's assignee and the purchaser. It was therefore prejudicial to give the above instruction.

Among the instructions requested by the defendants was the following:

"If you find from the evidence that some person other than the owner or lawful claimants thereof wrongfully took said automobile from the possession of the claimants, or one of them, and without their knowledge or consent, you cannot find for the plaintiff in this action for the forfeiture of said automobile."

If a person's automobile is stolen, and is used by the thief for the illegal transportation of intoxicating liquors, it certainly would be an act of injustice that was never contemplated by the Legislature to forfeit the owner's property. In our opinion defendants were entitled to the requested instruction.

Because of the errors in the instructions above referred to and the refusal to give the requested instruction the judgment is reversed. The cause is remanded to the district court of Morgan county, with directions to vacate the judgment and to grant appellants a new trial.

THURMAN, J.

There is no difference of opinion among the members of the court as to the purpose and intent of the Prohibition Law. The purpose and intent of the law is to prevent the unlawful

use of intoxicating liquors in the state of Utah. It is expressed in Comp. Laws Utah 1917, section 3343, quoted by Mr. Justice WEBER in his separate opinion, in which I heartily concur. Everything prohibited by the provisions of that section comes equally within the penalties of the law, whether the penalty is by a fine, imprisonment, or forfeiture of property. The only question upon which we disagree is as to the power of the court under the law to adjudge the forfeiture of the automobile used in the unlawful transportation of the liquor.

It must be conceded that the transportation, carrying, or importing of intoxicating liquor for unlawful purposes within this state is prohibited to the same extent as is the manufacture or sale thereof. It is a crime of equal degree, and entails upon the wrongdoer the same penalties and forfeitures. The general intent and purpose of the law being indisputable, I see no reason for considering in detail any of its provisions except those directly pertinent to the facts of this particular case. The gist of the offense is the illegal transportation of intoxicating liquor. The instrumentality used in the unlawful transportation was the automobile in question. The order of the trial court adjudging that it be forfeited and sold is the matter complained of. The question is, was the automobile the subject of forfeiture within the purview of the law? We have already referred to the section declaring what is unlawful and prohibited. We there find that transporting intoxicating liquors for unlawful purposes is forbidden. As before stated, it is made a crime of equal magnitude with every other forbidden act. The unlawful transportation of the liquor in this case occurred in the presence of the sheriff of Weber county. He arrested the defendant, who was in charge of the automobile which at the time was carrying 744 pints of whisky and a quantity of gin. The sheriff took the automobile, whisky, and gin into his possession and held them subject to the order of the court. The court ordered that the automobile be sold and the liquor destroyed.

Comp. Laws 1917, section 3359, also quoted by Mr. Justice WEBER, in part provides that when the violation of any pro-

vision of the act occurs in the presence of any one of the officers named, such officer may, without warrant, arrest the offender and seize the intoxicating liquors, vessels, *and other property so unlawfully used.* (Italics mine.) The remainder of the section, and other sections of the act, provide for the disposition of the property. No question is raised against the procedure adopted for disposing of the automobile if the terms of the statute authorize a forfeiture.

The doctrine is fundamental, and I assume there is no dissent, that in arriving at the intention of the Legislature the courts must give effect to the plain meaning of the language used to express the intention, and, furthermore, where the language is plain, unambiguous, unequivocal, and void of technical terms, there is no occasion for resorting to technical rules of construction. The plain and obvious meaning of the language must be adopted; anything else would be an unwarranted assumption of legislative authority.

If, then, the purpose is to ascertain the intention of the Legislature in a given case, and it is found that the Legislature has used plain, ordinary language, free from ambiguity and uncertainty, such as any intelligent layman might comprehend, we need go no further in search of the legislative intent. The Legislature has expressed it in its own language, and that is the supreme test. This I also assume is a proposition as to which there is no dissent. Mr. Justice FRICK, who has filed an opinion dissenting from the views of Mr. Justice WEBER, refers to the rule above stated as the simplest canon of interpretation, and relies on it primarily in support of his dissenting views.

We come now to a consideration of the language used by the Legislature—the language which constitutes the bone of contention in this proceeding. Bearing in mind that the act provides that the transportation of liquor for unlawful purposes is a crime, and also bearing in mind that the officer caught the defendant in the very act of committing the crime, using the automobile as an instrumentality, the section last referred to provides:

" * * * It shall be the duty of such officer, without warrant,

to arrest the offender and seize the intoxicating liquors, vessels, and other property so unlawfully used."

What is the plain, obvious meaning of the language? The intoxicating liquors and vessels are specifically enumerated. What other property was being unlawfully used in further-ance of the crime of illegally transporting the liquor? The most potent instrumentality in the perpetration of the crime was the automobile by means of which the crime was com-mitted. We are now discussing the plain, obvious, meaning of the language used. Is there any ambiguity or uncertainty? If we will keep out of mind technical rules which, as before suggested, should only be resorted to when the meaning is ob-scure, is there any doubt as to what the Legislature intended? I frankly confess my inability to see any ambiguity in the language used or any obscurity as to its plain meaning and intent. These views, as far as I am concerned, amount to an absolute conviction. That, however, does not imply that I may not be mistaken. Other lawyers and judges, abler per-haps than I, with equal tenacity cling to the opposite view. If I could conceive this to be a case in which it was my duty to resort to technical rules of construction, I could no doubt find much to say in opposition to the views herein expressed. I believe I am reasonably familiar with the various rules of construction resorted to by jurists and courts in attempting to arrive at the meaning of statutes and other kinds of writ-ten or printed instruments. But I also believe that to resort to them, when without them the language is plain and the meaning is obvious, tends more to confuse than to enlighten. It befogs the mind and leaves it in a state of perplexity, whereas without resorting to such rules there would be no sub-stantial reason for doubt.

From what has been said upon this subject it must not be conceived that the writer considers rules of construction as matters of small importance. On the contrary, I regard them as matters of the highest importance when the language of the instrument is such that its meaning is doubtful and uncer-tain. But, when the language of the instrument is plain and its meaning unmistakable, it is the duty of the courts to adopt

the meaning thus expressed.  It is just as much a disregard of duty on the part of the courts to resort to technical rules of construction when the Legislature itself has clearly expressed its intention as it is for the courts to read something into the statute which the Legislature did not intend.  In effect, the result is ordinarily the same.  In every case the probable effect is a distortion of the real meaning of the language used and consequently a perversion of the actual intention.  Nevertheless, technical rules have been invoked by the appellant, and confidently relied on in this case, and therefore this attempt to express my views upon the important question under review would not be satisfactory, even to myself, if I did not make more specific reference to some of the rules in question.

The first, and perhaps most important, of the technical rules of construction to be used when the meaning of the language is in doubt, is the doctrine of ejusdem generis.  This is especially invoked by appellant in this case and relied on as being conclusive.  The meaning of the term is clearly expressed in the separate opinions of both Mr. Justice WEBER and Mr. Justice FRICK.  I restate it, however, in substance only, to bring it to immediate attention in connection with these remarks.  The rule is: "Where general words follow the enumeration of particular classes of persons or things, the general words will be construed as applicable only to persons or things of the same general nature or class as those enumerated."  Applying that rule to the present case, it is contended that the words "and other property" contained in section 3359, supra, being general words following an enumeration of particular things, are limited to things of the same general nature as those enumerated.  In other words, it is contended that the language "and other property" means nothing more than things generally of the nature of intoxicating liquors and vessels, which are the particular things enumerated.  The vice of the contention, however, rests in the fact that the language of the statute in question falls within the exception to the rule instead of within the rule itself.  It will not be disputed by appellant, or any one seeking to apply the doctrine of ejusdem generis to the present case, that a

fundamental exception to the doctrine exists where the particular things enumerated are greatly different from one another. Another exception exists where the things enumerated are exhaustive of all things of a like nature so that there is nothing left to which the general words can apply. The doctrine covering both of these exceptions is stated in 36 Cyc., commencing on page 1121, in the following language:

"* * * Nor does the doctrine apply where the specific words of the statute signify subjects greatly different from one another, nor where the specific words embrace all objects of their class, so that the general words must bear a different meaning from the specific words or be meaningless."

See, also, 2 Words and Phrases (2d Ed.) 226.

The words of the statute in question here disclose the fact that the specific things enumerated differ greatly from one another, and also embrace all the objects of their class, so that it is necessary to give the general words a different meaning in order to give them any meaning at all. What things could differ more widely from one another, if we consider them separately and apart from each other, than the thing called "intoxicating liquor" and the things called "vessels"? A vessel has no similarity to intoxicating liquor, and from no point of view can it be considered of the same general nature or in the same class. A vessel is far more similar in its general nature to an automobile than it is to intoxicating liquor. So that we might, by a strained construction, contend that the words "and other property" include an "automobile" when it is used for carrying liquor, because in that respect, in a general way, there is some resemblance to a vessel. However, I make no such contention in this case. There is no necessity for it, and it might suggest the appearance of grasping at straws in order to uphold what I believe to be the correct view of the law. I do maintain, however, that intoxicating liquor as a thing is so widely different from "vessels" as "things" as to bring the case squarely within the first exception noted in the excerpt quoted from Cyc. The reasons for this exception to the doctrine of ejusdem generis is so apparent as to render it unnecessary to do more than barely mention it. When the specific things enumerated are so

greatly different in their nature one from the other it is impossible to conceive of the general words following being held to apply only to things of the same general nature. In such case, therefore, the doctrine of ejusdem generis cannot apply. The second exception noted in the excerpt quoted from Cyc. is equally conclusive. The word ''vessels'' embraces every possible thing of the same kind and nature. The same may be said of the words ''intoxicating liquors.'' They embrace and represent every kind of intoxicating liquor. If the specific things enumerated preceding the general words embrace everything of the same kind and nature, it follows that the general words ''and other property'' must be applied to other kinds of property or treated as meaningless. *That* the court has no right to do if it is possible to give the words some effect within the purview of legislative intent.

If I am correct in my analyses and right in my conclusions it must be conceded that the doctrine of ejusdem generis has no place in the case at bar. If it has no application here, for the reasons stated, it necessarily follows that another rule relied on by defendants has no application. If the doctrine of ejusdem generis has no application, the general words following the specific words may be applied to things superior to those enumerated as well as to things of the same general nature. If the general words were not intended to be limited to things of like nature to those enumerated in the preceding words, then the general words must be given their plain, ordinary meaning. In this case the plain, ordinary meaning of the words ''and other property'' embraces and includes any species of personal property in any manner used in connection with the illegal transportation of the liquor, which, as before stated, is the gist of the offense. Sutherland, Stat. Const. section 278.

The writer has had but little occasion to cite authority in support of the views herein expressed. The propositions advanced are in the main elementary. The section just cited from Sutherland, and the next succeeding section of the same work, in my judgment, state the law in a nutshell concerning the rules of construction applicable to the present case.

It is manifest from the position here taken that it would be inconsistent and illogical for me to digress from the course of reasoning adopted, and attempt to indulge in a discussion of authorities cited in support of appellant's contention. The authorities in the main uphold the doctrine of ejusdem generis and in a proper case are unobjectionable. Some of them, as might be expected, apply the doctrine to cases in which it should not be applied; others carry it to such an extreme as to bring reproach upon the doctrine itself as a rule of construction. Take, for instance, the case of *People* v. *Edelstein*, 91 App. Div. 447, 86 N. Y. Supp. 861. This case arose under the Sanitary Code of the city of New York. It provides as follows:

"No person owning * * * any stable or other premises, shall keep * * * therein any dog or other animal which shall by noise disturb the quiet or repose of any person therein or in the vicinity, to the detriment of the life * * * of any human being."

The court held that the law did not apply to a horse kept in a stable for the reason that a horse and dog are not ejusdem generis. If the court had decided the question upon the theory that a stable is ordinarily constructed for the very purpose of housing a horse, and that a horse in any event is not accustomed to making offensive or disturbing noise, the decision would have been more logical and from my point of view far more satisfactory. But the court, as is often the case, seemed to forget the real purpose of the law and the correct principles of interpretation and resorted to technical rules of construction. It unnecessarily and improperly applied the doctrine of ejusdem generis, and excluded the horse from the list of prohibited animals because it was a different type of animal, and also because it was supposed to be of superior caste. On the same principle the court would undoubtedly have excluded the braying donkey or a bawling cow, than which nothing in the form of noise made by an animal could be more disquieting or offensive. If the real purpose of the ordinance had been kept in view, it seems to me the court would at least have sought for other grounds upon which to decide the case than upon the doctrine of ejus-

dem generis. For the reasons stated, I am not impressed with the case referred to as an authority entitled to serious consideration. Many of the other cases relied on by appellant are afflicted with a similar infirmity. They cannot stand the test of reason. But, as before stated, it is not my intention to enter upon a review of the cases relied on by appellant, however strong the temptation.

It has been suggested, however, that the penalties of fine and imprisonment provided in the prohibition law are so drastic in themselves as to preclude the idea of forfeiting the automobile by which the liquor was transported. The contention carried to its logical conclusion would exclude the idea of any forfeiture whatever in any case under the act. If the penalties of fine and imprisonment are so drastic as to preclude the idea of forfeiting an automobile used in the commission of one of the crimes designated in the act, why should they not preclude the idea of forfeiting vessels, furniture, and fixtures oftentimes of greater value than an automobile. But even conceding they were of less value, what has value to do with the question? I find no such distinction or discrimination in the act itself, and this court has no right to assume legislative functions. The logic of such contention, in its last analysis, would take away the power to forfeit any property in any case arising under the act, no matter what might be the nature of the crime committed or character of the property used in its commission.

Near the beginning of these remarks I expressed the opinion that it was not necessary, in order to ascertain the legislative intent, to refer in detail to any of the provisions of the act except such as are clearly pertinent to the facts of the case. These provisions are found in the sections already referred to, 3343 and 3359, supra. I am still of the opinion that these two sections construed together disclose the actual intent and purpose of the law applicable to the facts of this case in ordinary and plain language, the meaning of which is unmistakable.

It is contended, however, with a force which implies conviction, that other sections of the law should be considered.

Section 3354, Comp. Laws Utah 1917, is especially relied on as limiting the character of the offense in connection with which the property may be seized, and also limiting the character of the property that may be seized.  This section limits the offenses to unlawful possession, manufacturing, selling, bartering, giving away, or otherwise furnishing liquor or keeping it for any of such purposes.  The things that may be seized are described as liquors, vessels containing them, implements, furniture and fixtures used or kept for such illegal acts. . It is conceded by me that this section does not include the unlawful transportation of liquors among the crimes enumerated, nor does it include automobiles or other means of transportation among the kinds of property that may be seized.  The reason, however, why it does not include transportation as an offense, or vehicles used in transportation among the things that may be seized, is, to the mind of the writer, perfectly obvious.  The section which is quoted by both of my Associates whose names have been mentioned refers exclusively to offenses at some particular place where fixtures and furniture, as well as liquors, vessels, and other implements, are supposed to exist.  The idea of transportation of liquor and the means of transportation are not within the terms of the language used, because in the very nature of things they have no connection with the matter which the Legislature had in mind in drafting that particular section. If this had been the only provision authorizing the seizure of property connected with violations of the law, the position of appellant would be irrefragable.  But is it to. be conceived that the Legislature, after having made the transportation of liquor a crime the same as other forbidden acts mentioned in the law, and after having provided for the forfeiture of other kinds of property used in connection with such crimes, to which they were peculiarly adapted, should deliberately omit to provide for the forfeiture of such instrumentalities as are used as a means of unlawfully transporting liquor and which are peculiarly adapted thereto?  Of course, if the Legislature did omit to make such provision, and only provided for seizure in the cases referred to in the section we

have just considered, that would be the end of controversy, however much one might wonder at the omission. But the Legislature did not, in my judgment, make any such omission. The law to which reference has been so frequently made, which provides that the officer, without warrant, when any offense under the law is committed in his presence, may arrest the offender and seize the intoxicating liquor, vessels, and other property so unlawfully used, plainly and explicitly authorizes the officer not only to seize the liquor and vessels, but to also seize any other property then and there used in committing the crime. This consideration makes the act harmonious as a whole. It gives consistency to the legislative intent. Instead of singling out one or more offenses for which forfeitures may be declared, and one or more kinds of property which may be forfeited when used in connection with crime, it provides the penalty of forfeiture for every offense under the law, all of which are equally pernicious and of equal magnitude. It says, in effect, no matter where the crime occurs, whether at some fixed place in a building or other structure or on one of the highways or byways of the state, the property used in connection with the crime is subject to forfeiture in order to effectuate the intent and purpose of the law. To take the provisions of section 3354, supra, with its limitations as to the offenses named and the kind of property that may be forfeited, and undertake to incorporate them into section 3359, supra, so as to limit the words "and other property" to mean only the kind of property mentioned in the former section, would, in my opinion, be nothing short of legislation. It would be to read something into the law which is not there, and hence be opposed to all the canons of construction with which I am familiar.

It having been established by the evidence beyond a reasonable doubt that the automobile was used for an unlawful purpose, it was incumbent upon the party claiming ownership of the property to not only prove his claim by a preponderance of the evidence, but likewise his ignorance of the illegal purpose for which it was used. Comp. Laws 1917, section 3357, clearly places this burden upon the party claiming owner-

ship of the property. However, I agree with my Associates in the opinion that he is not required to establish these facts beyond a reasonable doubt. If in good faith he proves by a preponderance of the evidence that he did not consent to the illegal use of the property and had no knowledge thereof, it should not be the subject of forfeiture, whatever may have been the means by which it was procured.

I concur in a reversal of the judgment.

CORFMAN, C. J.

I concur in the opinion of Mr. Justice WEBER, and in the reasons assigned by him as to why the seizure of the automobile in question was legal, and for holding that the district court had the authority and power under the statute to order a forfeiture to the state. I am also in accord with the views expressed by Mr. Justice THURMAN, in his separate opinion, that the meaning of the statute is plain and unambiguous, and that there is no occasion to resort to technical rules of construction in order to arrive at the legislative intent.

Statutes designed, as this statute was and is declared to be, "for the protection of the public health, peace, and morals," are to be given the most liberal construction by the courts in order to attain the purpose of their enactment. Moreover, as has been pointed out by my associate Mr. Justice WEBER, the statute under consideration expressly directs that "all of its provisions shall be liberally construed for that purpose." Experience, both before and since the enactment of the statute, has taught—and it is now conceded by all members of this court—that the automobile, when employed in the transportation of intoxicating liquors within the state, is the most effective and most often used instrumentality for the evasion of the law. As to the legal right to seize and forfeit to the state the automobile, when used for the transportation, furnishing, and disposition of intoxicating liquors in violation of law, sections 3354 and 3359 give the unqualified right to seize, and section 3357, as I interpret and construe its meaning to be, clearly provides for the forfeiture. For the en-

forcement of the law forfeitures of property used in the eva-
sion of statutes of the character of the one we now have under
consideration are not new or untried remedies.    They have
been imposed and upheld by the courts of England, from
whence our jurisprudence was taken, since the enactment of
the statute of 12 Edw. II, A. D. 1318; and in our own coun-
try under federal laws in matters pertaining to revenue for
more than half a century; and by the courts of all the states
since the enactment of laws regulating and prohibiting the
sale, manufacture, possession, and use of intoxicating liquors.
I am not unmindful that, generally speaking, forfeitures of
property are not favored by the courts; that they are held to
be additional penalties imposed upon the wrongdoer or vio-
lator of the law; and that such penalties are not to be im-
posed unless there is some statutory authorization for so do-
ing.    While express mention is not made in the statute we are
now considering of automobiles, among other things enumer-
ated as subject to seizure and forfeiture, in my judgment it
would be indulging in a very violent presumption to say that
it was not intended that they should be included in the ex-
pression ''other property,'' as used in the statute in desig-
nating what may be seized and forfeited.    More especially is
this so when experience, both before and since the passage of
the act, has taught—and it is, and has been, generally con-
ceded—that the automobile employed in the transportation of
intoxicating liquors is the most effective and most often used
instrumentality for the evasion of the purpose of the statute
we have under consideration.    It is a matter of common
knowledge that if the statute is to be made effective, and is
to accomplish the purpose of its enactment, property used
for the illegal transportation of intoxicating liquors within
the state should be forfeited.    A reading of the statute gives
a deep-seated conviction that its provisions were intended to
be both drastic and comprehensive in prescribing remedies
for the evils it seeks to eradicate and for imposing effective
penalties on those who violate, or seek to violate and evade,
its provisions.    To the end that the object of its enactment
may be attained, the courts and the officers of the law are ex-

pressly enjoined to give all of its provisions a liberal, not a strict, construction. In this respect I regard it as mandatory, more especially upon the courts. To deny the power of the court under this statute to forfeit automobiles used in the unlawful transportation and furnishing of intoxicating liquors is to say either that the automobile bears no relation to the evils sought to be eradicated by the statute, or that the legislative body that enacted the law had no regard whatever, when providing for its enforcement, for the well-known artifices adopted and used by those who might seek to render the act inoperative. As suggested by Mr. Justice FRICK in his dissenting opinion: "Let it be remembered that all laws of this state must be liberally construed and so as to effectuate their purposes. That has always been the rule and policy of this court."

The well-known text-writer, Henry Campbell Black, in his work on Interpretation of Laws, at page 132, lays down the following as a rule of construction:

"It is presumed that the Legislature intends to impart to its enactments such a meaning as will render them operative and effective, and to prevent persons from eluding or defeating them. Accordingly, in case of any doubt or obscurity, the construction will be such as to carry out these objects."

And in this connection this learned author further says:

"In construing a statute, of whatever class it may be, an interpretation must never be adopted which will render the act ineffectual or defeat its purpose, if it will admit of any other reasonable construction; but, on the contrary, the legislative intention to make an efficient and enforceable law must be presumed, and the construction must be such as to give it force and effect, and accomplish the purposes for which it was designed."

I very much appreciate what has been said by my learned and highly esteemed associate, Mr. Justice FRICK, that under our system of jurisprudence the courts should never assume legislative functions. I have the conscientious conviction that the statute before us, both in spirit and letter, directs the seizure not only of liquors and vessels, but "other property," in which must be included the automobile or any other instrumentality used by violators of the law in the illegal transportation, furnishing, and disposition of intoxicat-

ing liquors within our state.  As I view it, any other construc-
tion would be rendering the words "other property" mean-
ingless.  As a court acting within its proper sphere, we have
no better right to read words out of a statute, when placed
there with legislative intent and for the purpose of affording
an effective means of enforcement of the statute, than we
have to read words into the statute when not there nor in-
tended to be by the lawmaker.  In either case as a court we
would be assuming purely legislative functions, and would
not be administering the law as we find it.

GIDEON, J.

On the question of the power of the court to order a for-
feiture of the automobile in question, which may be desig-
nated as the paramount or important question for decision, I
agree in both the reasoning and the results reached by Justices
WEBER and THURMAN.  I concur in the reversal of the
judgment for prejudicial error on the part of the trial court
in its instructions to the jury.  On that point I understand
there is no division of opinion.

FRICK, J. (dissenting).

I regret that, after most careful reflection and considera-
tion, I am unable to concur in either the reasoning of my
associate Mr. Justice WEBER, or the conclusions reached
by him upon the question of the right to confiscate or forfeit
the automobile in which the intoxicating liquors in question in
this proceeding were found and seized, and upon the question
that the proceedings in question must be more liberally con-
strued because they partake of the nature of civil proceedings,
as hereinafter explained.

In view of the importance of the question, and in view that
in my judgment some of the most elementary and important
rules of interpretation, as well as some of the controlling pro-
visions of the Prohibition Act, have either been disregarded
or misapplied by my Associate in construing the act, I feel
constrained to set forth my views, as briefly as may be under

the circumstances, why I cannot yield assent to the conclusions reached. For me to merely express a general dissent would, in my judgment, amount to a disregard of duty.

In order to afford the reader a better understanding of the real differences between myself and my Associate, it becomes necessary for me to refer to the various provisions of the act much more fully than he has seen fit to do. Indeed, from the very meager outline of the provisions of the act in the opinion of Mr. Justice WEBER I cannot conceive how any reader of the opinion can well arrive at any satisfactory conclusion with respect to whether the construction he has given the act is or is not the correct one.

While the act is of great length, covering twenty pages of the 1917 Laws, and for that reason it is utterly impractical to set it forth at length in an opinion, yet, in my judgment, it contains certain controlling provisions which must be constantly kept in mind if a correct interpretation is to be obtained. Those provisions should, and can, be stated in an opinion. For the purpose, therefore, of giving the reader an opportunity to pass upon the controlling provisions of the act, I shall herein set forth as many of them as I deem necessary to a full understanding of them. In doing so I shall refer to the original act, which constitutes chapter 2 of the Laws of Utah 1917. While I shall refer to the original sections of that chapter, I shall, however, also, in parenthesis, give the corresponding numbers of the sections of the act as they now exist in Comp. Laws Utah 1917.

Mr. Justice WEBER has given section 1 (3341) of the act in full, to which I shall refer later. Section 2 (3342) consists of definitions merely. Section 3 (3343) is copied in full in the opinion of Mr. Justice WEBER. Section 4 (3344) relates to the enforcement of the act, and section 5 (3345), among other things, provides that a "violation of any of the provisions" of the act, if not otherwise provided, shall be punished by the imposition of "a fine of not less than fifty dollars nor more than two hundred and ninety-nine dollars, or by imprisonment in the county jail for not less than thirty days nor more than six months, or both such fine and im-

prisonment.'' It is, however, also provided that a second offense against any of the provisions of the act, except becoming intoxicated and drinking intoxicating liquors in a public place, etc., constitutes a felony, and subjects the offender to imprisonment ''in the state prison at hard labor for not less than three months nor more than two years.'' Section 6 (3346), section 7 (3347), section 8 (3348), and section 9 (3349), while containing some matters indicating the purpose of the act, yet the provisions therein contained have no material bearing upon the real questions involved here, and hence those provisions need no further consideration. Section 10 (3350), so far as material here, provides:

"All premises, buildings, vehicles, boats, and all *other places* where intoxicating liquors are manufactured, sold, bartered, kept, stored, or given away, or used in violation of law, or where persons are permitted to resort for the drinking of intoxicating liquors as a beverage, or where intoxicating liquors are kept for use, sale, barter, or delivery, in violation of law,  *   *   *   are hereby declared to be common nuisances."

''Common nuisances'' may be enjoined and abated by actions in equity and the property disposed of or sold as provided in section 11 (3351). Section 12 (3352) makes all leases void in case the premises are used contrary to the provisions of the act, and section 13 (3353) makes the owner of the premises guilty if he knowingly permits them to be used contrary to the provisions of the act.

Coming now to the more important sections of the Act, I must set them forth more in detail.

Section 14 (3354), among other things, provides:

"If any district, county, city, or town attorney or any peace officer or any other person has probable cause to believe that liquors are possessed, manufactured, sold, bartered, given away, or otherwise furnished in violation of this title, or are kept for the purpose of selling, bartering, or giving away or otherwise furnishing in violation of law, it shall be the duty of any such" officer or person to file with the judge of the district court or justice of the peace written information of the facts, and the informant aforesaid "shall describe as particularly as may be the place, and the names of the persons, if known, participating in such unlawful act."

It is further provided that a warrant shall issue which

shall command the officer to search the place or places described in the warrant, and if he finds—

"Liquors in unlawful possession or use, to arrest persons found therein in such place and bring them before said court; and to seize the said liquors *with the vessels containing them and all implements, furniture, and fixtures used or kept for such illegal acts*, and keep the same securely until final action be had thereon."

That section further provides that, if no person is found in possession of the place searched, the officer shall, nevertheless, seize and "shall securely keep all liquor *and other things* so seized," etc.

Section 15 (3355), among other things, provides:

"When any liquor, vessels, property, or other things, shall have been seized by virtue of any such warrant, the same shall not be discharged or returned to any person claiming the same by reason of any alleged insufficiency of description in the warrant, of the liquor, property, or place," etc.

It is, however, provided that any claimant shall have the right—

"To be heard on the merits of the case; and final judgment of conviction in such proceedings shall in all cases be a bar to all suits for the recovery of any liquors or *other things seized*, or of the value of same, or for damages alleged to arise by reason of the seizing and detention thereof."

Section 16 (3356) merely provides that the payment of internal revenue to the United States shall be prima facie evidence of certain facts.

Section 17 (3357) is another very long section, which, among other things, provides that, in case any warrant is issued by a justice of the peace which shall be returned showing "that liquors, vessels, or other things *used for purposes of selling, or otherwise disposing of such liquors contrary to law*," were found, the jurisdiction of the justice of the peace shall cease, and he shall forthwith "certify the record and all files to the district court of the county in which *said premises* are situated," and said district court is then required to proceed to final judgment. When the papers are filed in the district court the clerk thereof "shall fix a time for hearing said matter," and shall cause a notice "to be left at the *place*

where said liquors were seized," and if a person is described
in said warrant notice must be left at his "last known and
usual place of residence." All persons claiming any interest
in the things seized may, after such notice, appear "and
show cause, if any they have, why said *liquors, together with
the vessels in which the same are contained, and other prop-
erty should not be forfeited."* The section further provides:
"Whether any person shall so appear or not, said court shall,
at the time fixed, proceed to the trial of the case, and the
county or district attorney shall appear before said court and
prosecute said information, and show cause why said *liquors,
vessels, or other property* should be adjudged forfeited." It
is then further provided that "the trial of such case may be
the same substantially as in the cases of criminal prosecu-
tions before such courts." It is further provided that if
any person shall appear and shall make written claim that
"said liquors, vessels, or other property, or any part thereof,
claimed by him, were not owned or kept with intent to be
used in violation of the law, such party defendant may de-
mand a jury to try the issue," and if the issue is found
against him "the said court shall render judgment that said
*liquors, vessels, or other property, or any part thereof, be for-
feited."* It is then provided that any person appearing may
appeal from the judgment.

Section 18 (3358) provides: "Whenever it shall be finally
decided that the *liquors, vessels or other property seized as
aforesaid are forfeited,"* the court shall issue a written order
directing the officer "forthwith publicly to destroy said
liquors, vessels, or other property; provided, however, that
if some of such property except liquors, can be used for law-
ful purposes," such property may be sold and the proceeds
paid into the county treasury. If it is finally decided that
the "liquors or other property so seized are not liable to for-
feiture," the same shall be restored to the claimant, etc.

Section 19 (3359) being the one under which the automo-
bile involved in this case was taken, I give it in full:

"When a violation of any provisions of this title shall occur in
the presence of any sheriff, constable, marshal, police officer, or

other officer having power to serve criminal process, it shall be the duty of such officer, without warrant, to arrest the offender and seize the intoxicating liquors, vessels, and other property so unlawfully used, and to take such offender or offenders immediately before the court or judge having jurisdiction in the premises, and there make complaint under oath, charging the offense so committed; and he shall make return, setting forth a particular description of the liquors, vessels, and other property seized, and of the place where the same were seized; whereupon the court or judge shall issue a warrant commanding and directing the officer to hold safely the property so seized in his possession until discharged by due process of law; and such property shall be held in like manner as if the seizure had been made under a warrant therefor.

"If any peace officer shall have probable cause to believe any person has on or about his person in any kind of receptacle, or in any vehicle under his control, liquors in any quantity, in violation of any of the provisions of this title, such peace officer shall have authority to examine such vehicle and receptacle and the contents thereof, and the finding of any liquors in the possession of such person, or under his control, not bearing a permit of a justice of the peace or a tag or label of the Attorney General, shall be prima facie evidence that such liquors were kept for an unlawful purpose, and such person shall be forthwith arrested by such officer."

The italics in the foregoing quotations are all mine, and are used merely to direct the reader's attention to what, in my judgment, are some of the controlling provisions of the act.

The other twenty-three sections of the act, while important in many respects, nevertheless have no bearing upon the real question here involved, namely, the power of a court to forfeit automobiles and other instrumentalities used as a means in transporting liquors contrary to the provisions of the act.

In view of the foregoing, I unhesitatingly assert that if the courts of this state have the power to confiscate or forfeit automobiles or any other property which may be used as a means of transporting or carrying intoxicating liquors within this state contrary to the provisions of the act, such power must be implied from what is said in those portions of the act which I have quoted from in this opinion. Certainly no one will, nor, in my judgment, could, consistently contend that

such a power is expressly conferred in the act. In view of that fact it becomes necessary to carefully examine the language used in the act, and from what is there said determine, if possible, the intention of the Legislature.

In order to arrive at such intention I shall invoke the simplest canon or rule of interpretation first. This rule or canon merely requires that the language used be applied and limited to the subject-matter under consideration by the lawmakers, and, unless technical terms are used, give the words employed their usual and ordinary meaning, and, if possible, give each sentence, phrase, or word used due consideration and effect. In this connection it is important to keep in mind that vehicles were clearly in the minds of the legislators in passing the act. That fact is clearly and conclusively established by referring to sections 10 (3350) and 19 (3359) of the act. In the section first referred to the term "vehicle" is, however, clearly used as designating a *place* and nothing else. It is therefore impossible, under any rule of construction, to associate the term "vehicle," as used in that section, with the idea of its use as an instrument or means of transportation. We may therefore lay section 10 out of consideration. The word "vehicle" is next used in section 19 (3359), and it is there used in connection with the right of the officer to "examine" it for the purpose of determining whether there is any intoxicating liquor in such vehicle. There is absolutely no mention or reference, either directly or indirectly, to any vehicle in any other part of the act or in connection with any use or purpose except such as I have just mentioned. Nor was it necessary to speak of or mention vehicles in the other portions of the act for the simple reason that the subject-matter of those sections (which is made manifest from the excerpts I have quoted) is the unlawful manufacture, possession, sale, giving away, or other disposition of intoxicating liquors. The property, therefore, that is spoken of in those sections, as is clearly indicated by the language used therein, was the property used in connection with the illegal manufacture, possession, sale, giving away, or other disposition of intoxicating liquors. The word "disposition," as

here used, certainly, cannot refer to transportation.  No one, I think, can or will so contend.  There is not a word in any of those sections which refers to property of any kind or character that may be declared forfeited except such as is used in connection with the unlawful purposes I have just mentioned.  This fact is clearly established by the language that is used in the act authorizing the seizure and forfeiture of certain property.  The language there used in those sections, in and of itself, refutes the contention that automobiles and all other instrumentalities that may be used as a means of transporting or carrying intoxicating liquors contrary to the provisions of the act are subject to confiscation or forfeiture.

What, then, is the property that the act expressly authorizes to be seized?  The officer is directed to seize only "the said liquors with the vessels containing them and all the implements, furniture and fixtures used or kept for such illegal acts."  There is thus an express limitation respecting the character of property that may be seized, which is liquors, the vessels containing them, and all implements, furniture, and fixtures kept and used for such illegal acts.  What are the illegal acts referred to?  They are "that liquors are possessed, manufactured, sold, bartered, given away, or otherwise furnished in violation of this act, or are kept for the purpose of selling, bartering, or giving away or otherwise furnishing in violation of law."  Those are the acts referred to, and the things named are the things that may be seized. What is said respecting the court's power to declare a forfeiture is absolutely limited to the things I have enumerated and can refer to nothing else.  It is manifest that whatever terms may be used in the act in referring to the sale or forfeiture of the property seized must be limited strictly to the property authorized to be seized.  What is there in the act, therefore, which authorizes the confiscation or forfeiture of automobiles or any other instrumentality that may be used merely as a means of transportation?  I unhesitatingly assert that there is absolutely nothing.

But, as I understand Mr. Justice WEBER, he specially relies on section 19 (3359) as authorizing the seizure and for-

feiture of automobiles and all other instrumentalities used as a means of transportation. Again, I most respectfully submit that there is nothing in that section which, under any rule or canon of construction, justifies such conclusion. That section, at most, authorizes the officer to ''seize the intoxicating liquors, vessels and other property so unlawfully used,'' etc. That section, however, also authorizes such officer, in case he has probable cause to believe that any person has ''in any kind of receptacle or in any vehicle under his control, liquors in any quantity, in violation of any of the provisions of this act, such peace officer *shall have authority to examine such vehicle and receptacle and the contents thereof,''* and if he finds any liquor without a permit from a justice of the peace, or having the tag or label of the Attorney General, the possession constitutes prima facie evidence that the liquors so found are ''kept for an unlawful purpose, *and such person shall be forthwith arrested by such officer.''* Now, what is there in that section which authorizes the seizure, much less the confiscation or forfeiture, of the vehicle mentioned therein, whether it be a wagon, a carriage, an automobile, or what not? Here the term ''vehicle'' is thus expressly used, but in connection therewith the act expressly limits the right of the officer to ''examine said vehicle'' for the sole purpose of ascertaining whether any intoxicating liquors are contained therein. If he finds such liquors, the act expressly directs what he shall do. There is therefore nothing, either in section 19 (3359) or in any other section of the act, which confers power or authority to seize and confiscate any vehicle or automobile. A careful examination of all the provisions of the act, therefore, irresistibly leads to the conclusion that the confiscation of automobiles is not authorized.

If, in addition to the foregoing, some of the most elementary, yet important, rules of interpretation and construction are applied, the same result follows. I now refer to the general rule that when the enumeration of a special class of subjects or things is followed by a general clause in which subjects are enumerated which are not enumerated in the special class, the subjects or things that are enumerated in

the general clause must be limited to such subjects or things as partake of the same nature as those which are enumerated in the special class. This doctrine is commonly known as the doctrine of ejusdem generis. The doctrine is frequently applied, and, under circumstances like those in this case, I may say has universally been applied. The following are a few of the numerous well-considered cases which might be cited where the doctrine has been illustrated and applied, and the exceptions stated, to which I shall refer again later: *City of St. Louis* v. *Laughlin,* 49 Mo. 559; *State* v. *South,* 136 Mo. 673, 38 S. W. 716; *Transportation Co.* v. *Tobin,* 19 App. D. C. 469; *Ambler* v. *Whipple,* 139 Ill. 311, 28 N. E. 841, 32 Am. St. Rep. 202; *Phillips* v. *Christian County,* 87 Ill. App. 481; *State* v. *Walsh,* 43 Minn. 444, 45 N. W. 721; *Ex parte Williams,* 7 Cal. Unrep. 301, 87 Pac. 565; *People* v. *Edelstein,* 91 App. Div. 447, 86 N. Y. Supp. 861; *Alabama* v. *Montague,* 117 U. S. 602, 6 Sup. Ct. 911, 29 L. Ed. 1000; *Renick* v. *Boyd,* 99 Pa. 555, 44 Am. Rep. 124; *State* v. *Schuchmann,* 133 Mo. 111, 112, 33 S. W. 35, 34 S. W. 842; *State* v. *Jackson,* 168 Ind. 384-389, 81 N. E. 62; *American, etc., Co.* v. *Virginia, etc., Co.,* 91 Va. 272, 21 S. E. 466.

In *Phillips* v. *Christian County,* supra, the rule is stated in the following words:

"It is a familiar rule in the construction of statutes that the enumeration of a special class of subjects, followed by a general clause intended to embrace subjects not enumerated, the general clause will be construed to include only subjects that partake of the same nature as those already mentioned."

In connection with the rule just stated there is another which is that in case any number of subjects are enumerated, which enumeration is followed by a general statement, such as "other property" or "other things," etc., the property or things contained in the general statement cannot be of a class superior to those stated in the special enumeration. The rule is well stated in *Ambler* v. *Whipple,* 139 Ill. at page 317, 28 N. E. at page 842, 32 Am. St. Rep. at page 206, as follows:

"It is also a general rule of statutory construction that general words, following an enumeration of particular cases, apply to cases of the same kind and description; and [such enumerated]

things inferior shall not, by general words, be construed so as to extend to and embrace those which are superior."

It is also illustrated in *People* v. *Edelstein,* supra, in the following words:

"The sanitary code of the city of New York (section 195) providing that no person owning a stable or other premises shall keep therein any dog, 'or other animal' which shall, by noise, disturb any person in the vicinity, does not apply to horses kept in stables, but only to dogs and other animals of the same kind."

The only exception to the rule is that if all the inferior subjects are enumerated, and such enumeration is followed by a general statement referring to other things or other property, then, in order to give the general statement force and effect, the other things or other property may be of a class superior to those specially enumerated. If such were not the case the other things or other property mentioned would be entirely excluded from consideration, which would result in violating another cardinal rule of construction, namely, that all that is said in a statute must, if possible, be given force and effect. This latter rule has no application in this case, because when "other things" or "other property" are mentioned in the act they always refer to property used in connection with the possession, manufacture, sale, etc., of intoxicating liquors, as I have already pointed out. See, also, Black, Interp. Laws (2d Ed.) 207.

In any view, therefore, there is no escape from the conclusion that, in using the terms "other property" or "other things," the legislators did not and could not have intended to include automobiles, wagons, carriages, cars, and other instrumentalities used as a means of transportation, all of which instrumentalities must be included if automobiles shall be.

But there is another cogent reason why automobiles may not be included in the terms used in the act. As I have pointed out, the act provides for drastic penalties for the violation of any of its provisions. The transportation or carriage of intoxicating liquors is prohibited by the act, and in case its provisions are violated in that regard the penalty for the first offense is a fine of not less than $50 nor more than

$299, while a second offense subjects the offender to imprisonment at hard labor in the state prison. The penalties for unlawfully transporting intoxicating liquors are therefore precisely the same as for any other offense under the act, except the offense of drinking intoxicating liquors or becoming intoxicated, for which offenses the lesser penalties only are permitted. It was not necessary, therefore, to impose forfeiture upon the ground that the act of transporting liquors would go unpunished or insufficiently punished. The punishment in that regard is drastic, and neither the prosecuting officers nor the courts are given any discretion, and in case any violation of the act is committed prosecution must follow, and if the evidence justifies it, and it is a second offense, the offender must be sentenced to a term in the state prison.

Mr. Justice WEBER, however, insists that the act in question in terms provides that its provisions shall be liberally construed, and that the purpose of the act is to make this state what he is pleased to term "bone dry." He also refers to Comp. Laws 1917, section 5839, which provides that the Revised Statutes shall be the law of this state upon the subjects covered by them, and their provisions shall be liberally construed, etc. He also insists that the act must be construed as though it read that all "other property so unlawfully used in the illegal transportation of such intoxicating liquors" shall be forfeited. Let it be remembered that all laws of this state must be liberally construed and so as to effectuate their purposes. That has always been the rule and policy of this court. The Prohibition Act is therefore no exception to the general rule. Liberal construction, however, to carry into effect the provisions and penalties as they are expressed in the law, is one thing, while "liberal construction" by which terms and conditions are read into a law is quite another thing. To construe the provisions of the law liberally, so as to effectuate its purposes, is not only legitimate, but is wholesome and commendable. To read terms and conditions into law is, however, not construction, but amounts to legislation, and, when attempted by the courts constitutes usurpation pure and simple. To do the latter, while always objection-

able, becomes doubly so in enforcing penalties, confiscation, and forfeitures. Under the American system of jurisprudence no penalties, confiscation, or forfeitures can be imposed except such as are clearly expressed in the statute itself. The court may not, under the guise of "liberal construction," impose penalties not expressly provided for in the statute. To do that is quite as pernicious as to enforce them by ex post facto law. Ex post facto construction differs but little from ex post facto legislation. Indeed, ex post facto construction is far more objectionable, because, in addition to that vice it also constitutes usurpation by the courts. Let it not be assumed that because it is desirable to prevent the traffic in intoxicating liquors in this state, and to thus make the state "bone dry," and that such a result can better or only be effectively attained by confiscating or forfeiting the instrumentalities used in transporting or carrying liquors, that such a result, however laudable or desirable, justifies this court to read something into the Prohibition Act, or any other act, which is not found therein. Neither does the fact that the members of this court may think that the Legislature intended to accomplish such a result justify this court in supplying any penalty that may be omitted from the act. All persons have a right to know in advance precisely what the penalties are in case any law is, or any of its provisions are, violated. They can only know that, if the penalties are clearly expressed in the law itself. In that regard courts have no power to go beyond the penalties expressed in the law for the violation of any of its provisions. If there is one principle that the courts of England and of this country have adhered to with more tenacity than any other, it is the one that no penalties can be imposed as a punishment for any prohibited act except such as are expressed in the law itself. I shall only refer to a few of the scores of cases that could be cited on this most important subject. Among the very large number of well-considered cases which illustrate and fully support the foregoing statements, I refer to the following: St. Louis, etc., Co. v. *United States*, 110 C. C. A. 63, 188 Fed. 191; *People* v. *Cohen*, 94 Misc. Rep. 355, 157 N. Y. Supp. 591; *United*

*States* v. *Weitzel,* 246 U. S. 533, 38 Sup. Ct. 381, 62 L. Ed. 872; *Pennsylvania Ry. Co.* v. *Fucello,* 91 N. J. Law, 476, 103 Atl. 988; *U. S. Assurance Ass'n* v. *Frederick,* 130 Ark. 12, 195 S. W. 691; *St. Louis, etc., Ry. Co.* v. *State,* 125 Ark. 40, 187 S. W. 1064; *State* v. *Palanque,* 133 La. 36, 62 South. 224; *Kitts* v. *Kitts,* 136 Tenn. 314, 189 S. W. 375.

It must be remembered, as I have heretofore pointed out, that the provisions of the act are highly penal, and that the penalties, other than confiscation or forfeitures are quite drastic.   In referring to the question now under consideration, the court in *St. Louis Ry. Co.* v. *United States,* supra, said:

"A penal statute which creates and denounces a new offense, and the act under consideration is such a statute, should be strictly construed.  A man ought not to be punished unless he falls plainly within the class of persons specified as punishable by such a law.  *The definition of offenses and the classification of offenders are legislative and not judicial functions,*" etc.   (Italics mine.)

In *People* v. *Cohen,* supra, the Supreme Court of New York, in commenting upon a statute which, like the one in question, imposes penalties for the violation of its provisions, observed:

"In giving a construction to this section, we must bear in mind the statute makes penal the doing of something not before forbidden by law.  While the language employed should be given a reasonable construction for the purpose of carrying into effect the purpose of the Legislature in framing the statute, *it cannot be enlarged so as to make penal what is not plainly written in the statute itself*.  Words employed in such a statute should be given that [their] ordinary and usual meaning, and should not be so construed as to make out a crime by implication."   (Italics the writer's.)

This states the law as it is enforced by all the courts of this country.   If, for instance, a trial court should undertake to impose a penalty of $300 where the statute permits only $299, this court would, on appeal, reverse the judgment as being excessive and unauthorized.   Here, however, automobiles that may be worth several thousand dollars are permitted to be confiscated upon the bare statement that they come within the designation of "other property" or "other things."

Appeal from Second District.

While it is true that the district court based its power to forfeit the automobile in question upon the word "implement" as found in the statute, holding that the automobile constituted an implement yet, as I understand Mr. Justice WEBER, he does not base the court's authority upon that ground, but upon the ground that automobiles are comprehended within the phrase "other property" or "other things." Mr. Justice WEBER, therefore, does not agree with the district court in respect of the basis of authority to declare a forfeiture of automobiles. I am not surprised, however, that Mr. Justice WEBER was not impressed with the district court's basis of authority, since it is too clear for argument that the word "implement" as used in the act refers to property which is used for purposes other than transportation.

Neither does Mr. Justice WEBER agree with the dissenting member of the Supreme Court of Oklahoma in the case of *One Cadillac Automobile* v. *State* (Okl.) 172 Pac. 62. The dissenter there found the basis of authority to forfeit in the term "appurtenance" used in the statute. These differences between the several distinguished jurists most strikingly illustrate the wisdom of the rule of construction which has prevailed in all English speaking courts for centuries, that only such penalties as are clearly expressed in a statute should be enforced by the courts.

Before leaving the subject, however, I desire to quote a little further from the cases cited above.

In *United States* v. *Weitzel,* supra, the Supreme Court of the United States, in concluding the opinion, says:

"Statutes creating and defining crimes are not to be extended by intendment because the court thinks the Legislature should have made them more comprehensive." Citing cases.

I most respectfully, yet earnestly, insist that the vice of reading something into a penal statute because in his judgment the Legislature should have included it, is just what Mr. Justice WEBER is following in his opinion under the guise of what he is pleased to call "liberal construction."

The case of *Pennsylvania Ry. Co.* v. *Fucello,* supra, is pre-

cisely like the case last cited. In *U. S. Assurance Ass'n* v. *Frederick,* supra, the rule is stated thus:

"Statutes providing penalties are strictly construed, and the penalty is not charged in any case unless there is express statutory authorization."

A moment's reflection should suffice to convince any one that this is the only safe course to follow as a guide in construing and enforcing penal statutes, and especially in confiscating or forfeiting an offender's property in addition to the imposition of a fine or imprisonment, or both, as provided for in the statute.

To the same effect is *St. Louis, etc., Ry. Co.* v. *State,* supra.

In *State* v. *Palanque,* supra, the rule is stated in the first headnote thus:

"The courts will not apply a penal statute to a case, not within the obvious meaning of the language employed, even though it be within the mischief to be remedied. What the Legislature, through inadvertence or otherwise, omits from such a statute, the courts cannot supply; their duty being to interpret, not to amend, the law."

*Kitts* v. *Kitts,* supra, is to the same effect.

In *State* v. *Le Blanc,* 115 Me. 142, 98 Atl. 119, it is said:

"A criminal offense cannot be created by inference or implication, nor can the effect of a penal statute be extended beyond the plain meaning of the language used."

In *Marter* v. *Repp,* 80 N. J. Law, 530, 77 Atl. 1030, a penal statute is defined thus:

"A 'penal statute' is one which enforces a forfeiture or penalty for transgressing its provisions or doing a thing prohibited. 'Penal' is a much broader term than 'criminal,' and includes many statutory enforcements of police regulations the violations of which are in no sense crimes."

As a matter of course, all the acts for which penalties provided for in the act here in question, including forfeitures, are imposed constitute crimes under our statute. Indeed, a repetition of any prohibited act, except as hereinbefore stated, constitutes a felony. In view therefore, that there can be no forfeiture except in connection with the commission of a crime, the provisions of the act in question, within the defini-

tion of the Supreme Court of New Jersey, necessarily are both penal and criminal.

In *U. S. Fidelity & G. Co.* v. *Marks,* 37 Nev. 306, 142 Pac. 524, it is said:

"Penalties or forfeitures in addition to those stated in the statute should not be implied or imposed by the court."

Manifestly that is both good law and good sense.

See, also, *People* v. *Doyle,* 13 Cal. App. 611, 110 Pac. 458; *Price* v. *Board of Com'rs,* 22 Colo. App. 315, 124 Pac. 353; *Symmes* v. *Sierra Nevada M. Co.,* 171 Cal. 427, 153 Pac. 710.

Recurring now to the proposition that it is just as objectionable to impose penalties by ex post facto construction as it is to do so by ex post facto laws, the Circuit Court of Appeals of the Eighth Circuit, in *Martin* v. *United States,* 168 Fed. 198, 93 C. C. A. 484, states the law thus:

"A penal statute which creates and prescribes punishment for an offense committed by a specific class must be strictly construed. One who was not, beyond reasonable doubt, within the class by the express terms of the statute, may not be brought within it after the event by interpretation. Ex post facto law by judicial construction is as pernicious as ex post facto legislation."

In the foregoing case the judgment entered in the lower court, which is reported in 7 Ind. T. 451, 104 S. W. 678, is reversed.

I refrain from citing further cases. In case, however, the reader desires to pursue the subject further, he will find numerous cases in which the doctrine stated in the foregoing quotations is illustrated and applied by reference to the subject "Statutes" in volume 44 Cent. Dig. sections 322-323, and to the same subject in Dec. Dig. (Key-No.) section 241.

Lest I may be misunderstood, I desire to again state that I do not contend that the old rule of strict construction of criminal and penal statutes applies in this state, nor do I refer to the foregoing cases for that purpose. The act in question should receive a fair, a reasonable, and a liberal construction so as to effectuate its purpose. What I most earnestly contend for, however, is that this court cannot, by construction or implication, extend the penalties nor the forfeitures to persons or property not expressly mentioned in

the act. To do that is to impose penalties in excess of those mentioned in the statute, which all the courts, hold cannot legally be done, regardless of the doctrine of liberal construction.

It is, however, insisted by Mr. Justice WEBER that the proceedings in question are civil and not criminal, and for that reason a different or more liberal rule in declaring forfeitures applies. In making that statement I respectfully submit that he has fallen into the same error as he has in assuming that, because the act provides for liberal construction, therefore the ordinary rules of law in imposing penalties do not apply. The act, however, in terms, provides what the nature of the proceedings shall be. It provides: "The proceedings in the trial of such case may be the same substantially as in the case of criminal prosecutions before such [district] courts." The proceedings referred to are the proceedings in which forfeitures may be declared, and it is too manifest for argument that they can refer to no others. It certainly will not be contended that a person may be convicted and sentenced to the state prison for a felony in a civil proceeding; hence the proceedings referred to in the statute refer to the proceedings relating to the forfeiture of property and not to the conviction of the offender. The proceeding to forfeit is one in rem. In applying the rules of construction for which I contend, however, it is utterly immaterial whether the forfeiture proceedings are deemed civil or criminal, since the contention that a different rule of construction and procedure applies whether the proceeding be civil or criminal is thoroughly exploited by the Supreme Court of the United States in the case of *United States* v. *Chouteau,* 102 U. S. 611, 26 L. Ed. 246, where Mr. Justice Field, in speaking for that court, said:

"Admitting that the penalty may be recovered in a civil action, as well as by a criminal prosecution, it is still a punishment for the infraction of the law. The term 'penalty' involves the idea of punishment, and its character is not changed by the mode in which it is inflicted, whether by a civil action or a criminal prosecution. * * * To hold otherwise would be to sacrifice a great principle to the mere form of procedure, and to render settlements with the government delusive and useless."

That, I think, effectively disposes of the proposition that the rule of construction in enforcing penalties is different in civil cases from what it is under criminal statutes. But, as already pointed out, the act in question is both criminal and penal. Moreover, no property is subject to confiscation unless it is used in violation of the provisions of the act, and any violation of the act constitutes a crime, and if repeated a felony. The result in any case is therefore highly penal, and where the possession is known and prosecution follows it must likewise be criminal, since the prosecuting officers have no discretion, but must prosecute, and, if the evidence shows a violation of the act, the court must sentence if conviction follows prosecution.

The case of *Kolb* v. *Peterson*, 50 Utah, 450, 168 Pac. 97, is referred to as a precedent upon the question of liberal construction. The Kolb Case has, and can have, no bearing upon the real question involved in the case at bar. It very often happens that a court not only is justified in construing, but, as a matter of common justice, should construe, an act so as to enforce its general spirit and purpose, although the language employed therein may be obscure and unsatisfactory respecting some of the provisions of the act. That is what happened in the Kolb Case. We are, however, not now dealing with such a case. Here the question is not what is the general purpose of the act, but it is what are the penalties that are prescribed in case its provisions are violated in certain particulars. The general purpose of the act cannot be looked to for the purpose of determining what penalties shall be inflicted for a violation of its provisions. Nor is the intention of the Legislature in that regard of any consequence unless expressed in the act. It is utterly immaterial what penalties the Legislature had in mind so long as it failed to state them in the act itself. This is the logic, purport, and the spirit of all of the cases I have hereinbefore cited. The fallacy of my Associate lies in the assumption that penalties can be created by the courts by the application of the doctrine of "liberal construction." If that doctrine be once applied to the enforcement of unexpressed penalties the prece-

dent so established will, I am sure, be "more honored in the breach than in the observance."

Finally, it is urged that merely to apply the remedy of enjoining the use of automobiles, and thus prevent the illegal transportation of intoxicating liquors by them, would be "ineffectual and abortive," etc. The question is not whether the Legislature has or has not provided for these penalties to prevent the transportation of intoxicating liquors, but the question is, what are the penalties it has provided? If this court supplies, by construction and intendment, what the Legislature omitted, it necessarily transcends its powers. To do that is far more mischievous in its consequences than it would be to permit automobiles to escape forfeiture. The Legislature can cure the latter evil if it be such at any time, while the evil lurking in imposing unexpressed penalties by construction or intendment will become a precedent which may easily result in disregarding one of the most fundamental principles of our jurisprudence.

I concur most heartily in the statement that the confiscation of automobiles, when used as a means for the unlawful transportation of intoxicating liquors, would go very far in preventing, if it did not entirely prevent, the illicit traffic in such liquors. What I insist upon, however, is that the Legislature, and not the courts, should authorize their confiscation. I also unhesitatingly agree with the proposition that courts should not so construe and apply statutes as to "devitalize" them. In this connection I desire to state, however, that courts cannot well "devitalize" what never had vitality. Moreover, if forsooth a court should err in construing and applying the penal provisions of a statute, and should erroneously refuse to enforce any penalty except such as are clearly expressed therein, although the penalty in a particular case could be implied, the mischief in making such an error would, nevertheless, be infinitely less than what would necessarily result from the establishment of a precedent by the court of last resort which would authorize the courts to apply omitted penalties merely because a statute was "enacted for the public good," and unless assumed penalties are enforced

the statute will lose some or much of its effectiveness. To err with regard to the first proposition constitutes a mere error of judgment, and violates no fundamental principle of jurisprudence; while to do the latter constitutes usurpation, and violates the underlying principles of common justice, as well as the principle upon which rests the doctrine that the state governments are divided into three independent, co-ordinate branches, neither of which may trench upon the trust and powers conferred upon any of the others. It is for the reason last stated that the courts of this country universally shrink from supplying defects in laws, and especially refuse to enlarge upon or to enforce penalties which are not clearly expressed in the statute. If, however, the court fails in the enforcement of certain statutory provisions because in its judgment they are indefinite and uncertain, the remedy is clear and within easy reach. The Legislature can supply the alleged defect, just as was done by the Legislature of Oklahoma after the Supreme Court of that state in the case hereinbefore referred to held that the Prohibition Act of that state did not authorize the confiscation of automobiles. What the Supreme Court of Oklahoma did in that case I submit this court ought to do in this. It is then up to the Legislature to say precisely to what extent property may be confiscated and forfeited for a violation of the act in question.

I have shown that in this case the court cannot err if it follow the act as written; that the act provides in explicit terms just what property may be confiscated or forfeited; that vehicles, which necessarily include automobiles, are expressly mentioned in the act, and when they are mentioned it is always in connection with something other than their use as a means of transportation, and entirely foreign to the subject of confiscation and forfeiture. Under every rule of construction, therefore, the ruling of the district court in declaring the automobile forfeited is manifestly erroneous.

Since writing the foregoing both the CHIEF JUSTICE and Mr. Justice THURMAN have handed me their opinions, in which they set forth their views for concurring with Mr. Justice WEBER. While I have the highest regard for the

views of both of my Associates yet I respectfully submit that there is practically no reason assigned in either opinion which is not expressly or inferentially covered by what is said by Mr. Justice WEBER, except, perhaps, that the CHIEF JUSTICE has added something in his concurring opinion in the statement that "sections 3354 and 3359 give the unqualified right to seize, and section ·3357, as I interpret it and construe its meaning to be, clearly provides for the forfeiture." I expressly copied all the essential parts of those sections for the purpose of showing that section 3354 expressly limits the right to seize the property used for purposes other than for transportation; that section 3357 again expressly limits the confiscation or forfeiture of property that is used for other purposes; and that, in view of the language of section 3359, the term "other property" cannot be construed to mean automobiles, for the reasons: (1) Because the phrase "other property" clearly refers back to the enumerated articles theretofore mentioned in the act, and is thus given full force and effect; and (2) because in that section the term "vehicle" cannot be held to come within the phrase "other property," because "vehicle" is expressly mentioned, and the power that the officer may exercise with respect thereto is expressly defined and limited. Why provide that the officer "shall have authority to examine such vehicle" when he already had plenary authority to seize it? If the officer is empowered to seize the vehicle, and therefore an automobile, such power was conferred upon him, and it existed when the Legislature conferred the authority to · examine it, and specially provided what he shall do, as I have pointed out in my opinion. It is therefore manifestly fallacious to say that in order to give the phrase "other property" any meaning we must allow confiscation and forfeiture of automobiles. The phrase "other property" is given full meaning and effect wholly independent of the right of confiscation, and therefore the rule of ejusdem generis should apply precisely as I have contended for.

In this connection I also feel constrained to remark that, in view that what I have said respecting the drastic nature of

Appeal  from  Second  District.

the penalties imposed in the act for violation of its provisions
respecting the transportation of intoxicating liquors was
merely said to point out that the Legislature had not over-
looked that matter, and hence there was no necessity for
the court to assume that the Legislature must have intended
to impose some penalty for the violation of all of the pro-
visions of the act, I fail to grasp either the necessity, or the
utility of Mr. Justice THURMAN'S remarks upon that sub-
ject. This is especially true if the fact is kept in mind that
I, like all other citizens, am bound by the decision of the
majority. What I may say, however, binds no one, and I am
doing no more than exercising the right and discharging my
duty to give reasons why in my judgment, by what is said
in, as well as by what is omitted from, the act, the construc-
tion placed upon it by my Associates respecting the right to
confiscate automobiles is not justified. Be that as it may,
however, the important fact still remains that all that is, or
can be, relied on by my Associates in declaring the right to
confiscate automobiles and all property that may be used for
transporting or carrying intoxicating liquors contrary to the
provisions of the act, which includes all property from a rail-
road car to a woman's handbag, is the term "other property,"
as that term is used in section 19 (3359). In view of that
fact I can only submit what I have said to the members of a
fair and impartial profession, who, in view of their knowl-
edge of the law, are capable of forming an intelligent and
just conclusion respecting the soundness or unsoundness of
my views. My views as herein expressed are based on my best
judgment and enforced conviction, and those are my only
guides. Notwithstanding the views of my Associates, there-
fore, I must still insist, and I submit in all candor, that if all
that is said in the act, and if the subject-matter concerning
which particular language, phrases, or expressions therein
used, be kept in mind, then there is not only nothing in the
act from which a court can legally declare the confiscation of
automobiles, but there is ample reason why such confiscation
should not be judicially declared.

   While, therefore, my judgment and convictions prevent me

from concurring with my Associates respecting the right of the confiscation of automobiles and all other property that may be used as a means of transportation ′of intoxicating liquors contrary to the provisions of the act, I most cheerfully join them in a hearty pax vobiscum.

I concur in the reversal of the judgment upon the other ground stated by Mr. Justice WEBER.